UNITED STATES, Appellee,

v.

Thomas D. MORRISON, Master Sergeant,
U.S. Army, Appellant.

No. 98–0617.
Crim.App. No. 9600461.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 14, 1999.

Decided Sept. 30, 1999.

**118**

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and EFFRON, J., joined. SULLIVAN, J., filed a dissenting opinion, in which CRAWFORD, J., joined.

For Appellant: *Captain John C. Einstman* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Adele H. Odegard,* and *Major Leslie A. Nepper* (on brief); *Lieutenant Colonel Michael L. Walters* and *Captain Dirk Gifford.*

For Appellee: *Captain Troy A. Smith* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Major Lyle D. Jentzer* (on brief); *Captain Steven H. Levin.*

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of 1 specification of assault consummated by battery on a child under the age of 16 years, and 2 specifications of committing indecent acts, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 USC §§ 928 and 934, respectively. In accordance with his guilty pleas, appellant also was convicted of 3 specifications of larceny and 8 specifications of wrongfully disposing of stolen property, in violation of Articles 121 and 134, UCMJ, 10 USC §§ 921 and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of four issues, and we resolve this case on the first granted issue:[1]

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING HIGHLY INFLAMMATORY TESTIMONY OF UNCHARGED MISCONDUCT FROM APPELLANT'S DAUGHTER REGARDING THE FREQUENT SEXUAL ABUSE IMPOSED BY APPELLANT OVER AN 8–YEAR PERIOD.

For the reasons set out below, we reverse.

*Factual Background*

Appellant was charged with committing an indecent act with MR, the daughter of a family friend, by touching her vagina on 1 occasion between September 1 and November 16, 1994. MR was 9 years old when she testified in late January of 1996. MR testified that while she was visiting in appellant's home, appellant put his hand inside her underpants and touched her vagina.

The defense theory was that MR was coached and influenced by adults to fabricate her accusation against appellant. The defense established a number of inconsistencies in MR's previous statements. To support the theory that adults who were biased against appellant influenced MR, the defense introduced evidence that MR's mother was engaged in a lesbian relationship with appellant's wife until February of 1994. The relationship terminated when appellant's wife declined to leave him and begin living with MR's mother.

The court members found appellant not guilty of committing an indecent act with MR, but guilty of the lesser-included offense of assault consummated by a battery "by touching [MR] in an inappropriate manner."

Appellant was charged with two specifications of committing indecent acts with LL, his niece. He was charged with fondling her thighs and breasts, placing his fingers in her vagina, and "French-kissing" her. The offenses were alleged to have been committed in January of 1993, when LL was 14 years old.

LL testified that the offenses happened during a family gathering at her grandparents' house. She, her sister, appellant, and appellant's three daughters all slept on the living room floor, because there were not enough beds for everyone. The area was "pretty cramped," and appellant slept next to LL. LL was wearing a long nightshirt and underwear. LL testified that, during the night, appellant put his hand on her leg, moved it up under her nightshirt, and touched her breasts. Then he put his hand in her underpants and stuck his finger in her vagina. LL testified that appellant asked her, "Wasn't I glad I took my jeans off?"

LL testified that the next morning, appellant asked her, "Are you mad at me?" She did not respond. She testified that, later in the day, while riding in appellant's car along with her sister and appellant's daughters, appellant told her "not to let sex control [her] life."

LL testified further that, when they returned to the grandparents' house, appellant asked her if he could lay on the floor with her again and if he could orally sodomize her. She testified that she did not know what he meant, but she said "no."

1. The other granted issues are as follows:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY PROHIBITING APPELLANT FROM PRESENTING ONE OF HIS FEW VIABLE DEFENSES TO THE PANEL: THAT THERE EXISTED TWO POSSIBLE SOURCES OF THE SEXUAL ABUSE OF LL, HIMSELF AND HIS FATHER, AND THAT LL'S ALLEGATIONS ARE NOT INCONSISTENT WITH ACTUAL ABUSE FROM ONLY ONE OF THE TWO RELATIVES.
WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE CHALLENGE FOR CAUSE OF LIEUTENANT COLONEL RETHERFORD, WHO EXPRESSED DISAPPOINTMENT OVER THE ACQUITTAL OF A SOLDIER CHARGED WITH THE SAME OFFENSES AS APPELLANT IN A PREVIOUS COURT–MARTIAL.
WHETHER THE TRIAL DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE TO APPELLANT BY NOT PRESENTING EVIDENCE OF APPELLANT'S RESTITUTION ON SENTENCING.
Because we resolve the first granted issue in appellant's favor, we do not resolve these issues.

Finally, LL testified that, after appellant and her grandfather had been drinking, appellant was drunk and about to fall on the children. As he fell forward, she held him up with her hands, and he leaned forward and "French-kissed" her. She did not tell anyone because she was too embarrassed. She testified that she did not reveal appellant's behavior until she was being treated by a gynecologist for an infection. The gynecologist asked her if she was sexually active or had been sexually abused, and at that time she accused appellant of abusing her. Based on LL's testimony, appellant was convicted of committing indecent acts with her.

Appellant's natural daughter, AM, also testified that she had been sexually abused by appellant. Appellant was not charged with any offenses involving AM.

AM's testimony at the Article 32 [2] investigation described numerous acts beginning when she was "around six" and ending shortly after her 13th birthday. AM testified that appellant helped her insert her first tampon and taught her how to kiss. She recalled performing oral sex on appellant "in the german housing bathroom." She testified that she remembered appellant rubbing his genitals against hers and his mustache tickling her legs and "other places."

After considering a motion *in limine* and reviewing AM's testimony at the Article 32 investigation, the military judge made the following findings of fact and conclusions of law:

First, the fact finder could find by a preponderance of the evidence that the alleged misconduct occurred;

Second, the acts alleged in this case are similar in many respects to those about which [AM] would testify. They tend to demonstrate an unusual, unnatural sexual fascination by Master Sergeant Morrison towards young girls. The nature of the acts are similar. They involve touching, fondling, often in public places: in the instance of the alleged victim in this case, in a room with other people; in the instance of [AM], in one instance in a German bath house, all of a public-type nature.

Third, as I said, the nature of the acts are similar. They involve positions of the accused's adult authority over young girls. They involve instances of girls of approximately the same age. Although [AM]'s testimony indicates that it occurred initially when she was 6 years [old], that it continued until she was 12 or 13 years old, which is the approximate age of at least one of the victims in this case.

I find that the testimony proffered by the government of [AM] can be considered by the members of the court for its limited purpose, if any, to show motive, to show continuing plan or scheme; that is, to show that Master Sergeant Morrison had an unnatural sexual desire for young girls near the age of the victims in this case and that in order to satisfy those sexual desires, he would use his adult authority over young girls to molest them.

Third, that he had an opportunity or ability to do that; and

Fourth, for its limited purposes, if any, to show a lack of mistake.

Finally, the military judge announced that he had applied "the 403 balancing test" and concluded that the probative value of AM's testimony was "not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members of the court."

AM was 23 years old at the time of trial. She testified that when she was between 4 and 6 years old, appellant taught her how to kiss, fondled her vagina, and put his fingers in her vagina. She testified that he "French kissed" her, and she reciprocated.

AM testified that, when she was 12 years old, appellant performed oral sex on her and then kissed her and fondled her. She described another occasion when appellant took her into his bathroom and told her to perform oral sex on him. She testified that she remembered the feel of his mustache when he performed oral sex on her, and that he digitally penetrated her "a lot." She testified that appellant told her that she was "so tight," that "he would like to be inside [her]",

2. Uniform Code of Military Justice, 10 USC   § 832.

and that "he was saving her for [her] husband." She testified that appellant then put her on top of him and rubbed her genital area with his.

AM testified that she grew increasingly uncomfortable with appellant's conduct and that, at some time before her 13th birthday, she asked him to stop, and he did. However, she also testified that, when she was 15 or 16 years old, appellant came up behind her while she was washing dishes and caressed her buttocks. She punched him "right in the solar plexus," and appellant laughed.

At the conclusion of AM's testimony, the military judge instructed the members as follows:

> This evidence may be considered by you for a very limited purpose, and it's for its limited purpose—for the limited purpose of its tendency, if any, to establish some type of an unnatural fascination by the accused in this case for young girls or to establish a motive or a plan or a scheme or design. It may also be used for its tendency, if any, to establish an intent [to gratify his sexual lust or desires].... It may also be used for its tendency, if any, to rebut a defense of accident on the part of the accused.

Appellant testified in his defense, but limited his direct testimony to the allegations concerning LL. He testified that he awakened during the night to find LL pulling on his right arm and hand and pressing his hand to her chest. He testified that his hand was outside her nightshirt. He withdrew his hand and whispered to LL, "This isn't right what you're doing. You need to talk to your mother." LL was 13 or 14 years old at the time. Appellant testified that, while they were riding in his car, he told LL words to the effect, "Sex is going to get you in trouble. You need to, you know, be in more control of yourself." Appellant admitted drinking homemade wine that evening, but he denied kissing LL.

Appellant testified that he was surprised by LL's allegations. He testified that after he asked his wife for a divorce,

> all this stuff just starts hitting me at one time. It just was nonstop. And it was allegation after allegation, and I had to keep going to the battalion commander, company commander almost every week.

He testified that his wife became "[v]ery hostile" after he filed for divorce. He testified that "[s]he's threatened to take everything I have ever cherished."

### Discussion

Mil.R.Evid. 404(a), Manual for Courts-Martial, United States (1995 ed.),[3] sets out the general rule: "Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." This Court has consistently stated that evidence of uncharged bad acts may not be introduced solely to show that an accused has a propensity to commit crimes of the type charged. *See United States v. Miller,* 46 MJ 63, 65 (1997); *United States v. Castillo,* 29 MJ 145, 150 (CMA 1989); *United States v. Hicks,* 24 MJ 3, 7 (CMA 1987); *United States v. Rappaport,* 22 MJ 445, 447 (CMA 1986).

Mil.R.Evid. 404(b) sets out several exceptions to the prohibition in Mil.R.Evid. 404(a). It allows "[e]vidence of other crimes, wrongs, or acts" for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[4]

In *United States v. Reynolds,* 29 MJ 105, 109 (CMA 1989), this Court adopted a three-part test for determining admissibility of evidence offered under Mil.R.Evid. 404(b):

> (1) Whether the evidence reasonably supports a finding by the court members that appellant committed the prior crimes, wrongs, or acts;

---

3. All Manual provisions are cited to the version applicable at appellant's trial. The 1998 version is unchanged, unless otherwise indicated.

4. Mil.R.Evid. 414 permits evidence of similar crimes in child molestation cases, but it was not

in effect at the time of appellant's court-martial. Accordingly, we do not decide whether the evidence at issue would have been admissible under Mil.R.Evid. 414.

(2) Whether the evidence makes a "fact of consequence" more or less probable; and (3) Whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Mil. R.Evid. 403.

■ Proof of the first prong is satisfied if the conduct is proven by a preponderance of the evidence. *See Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). The first prong is not at issue in this case. If AM's testimony is believed, the first prong is satisfied.

Turning to the second prong, the "fact of consequence" that is made more or less probable by the evidence, trial counsel offered the evidence to show motive, intent, plan, opportunity or ability, and lack of mistake. The military judge ruled that the evidence was admissible to show motive, plan or scheme, ability or opportunity, and lack of mistake. Government appellate counsel assert that the evidence was also admissible to prove intent and modus operandi. Modus operandi was not litigated as a basis of admissibility at the court-martial.

In *United States v. Munoz*, 32 MJ 359, 363 (CMA 1991), this Court upheld the admission of evidence of uncharged sexual misconduct to show a plan or scheme, even though there was a 12–year gap between the uncharged misconduct and the charged misconduct. This Court noted that "[t]he common factors were the age of the victim, the situs of the offenses, the circumstances surrounding their commission, and the fondling nature of the misconduct." Our decision in *Munoz* was consistent with our earlier decision in *United States v. Brannan*, 18 MJ 181, 183 (CMA 1984), where we held that uncharged acts "must be almost identical to the charged acts" to be admissible as evidence of a plan or scheme. *Cf. United States v. Rappaport*, *supra* (evidence of "disparate acts" of illicit sex and drug abuse was inadmissible because it showed propensity, not plan).

■ Where evidence is offered to show modus operandi, there must be a "high degree of similarity between the extrinsic offense and the charged offense." The similarity must be so great that it is "like a signature marking the offense as 'the handiwork of the accused.'" *United States v. Gamble*, 27 MJ 298, 305 (CMA 1988) (internal citations omitted).

■ Where a military judge's ruling on admissibility of evidence includes factfinding, we will not overturn the findings of fact unless they are clearly erroneous. *United States v. Ayala*, 43 MJ 296, 298 (1995). Where, as in this case, the military judge determines that the evidence is admissible under Mil.R.Evid. 404(b) and Mil.R.Evid. 403, we will not reverse except for a "clear abuse of discretion." *See Miller*, 46 MJ at 65.

Our analysis of AM's testimony leads us to the following conclusions:

*Relationship between victims and appellant*: The only common element is that all three victims were young girls. AM was appellant's natural daughter; LL was his niece; MR was unrelated.

*Ages of the victims*: AM testified that the abuse started when she was 4–6 years old and continued until she was 13 years old. LL testified that she was 14 years old when the acts occurred. MR would have been 8 years old when the act occurred. The only common element is a broad range of ages from 4–14.

*Nature of the acts*: Appellant was charged with fondling, "French kissing," and digital penetration of LL, and indecently touching MR. AM testified to a broad range of sexual acts, ranging from kissing and fondling to cunnilingus and fellatio. AM and LL both accused appellant of "French kissing" them, but AM described a private act in her home and LL described a drunken, public act.

*Situs of the acts*: AM described conduct in the privacy of her home. LL described public conduct outside the home. MR described conduct in appellant's home with other children nearby. In this regard, the military judge's finding of fact that all the charged and uncharged acts were "public" was clearly erroneous. AM's testimony was that the fellatio occurred in the private bathroom of her

home, not a public German bathhouse as found by the military judge.

*Circumstances of the acts*: There is no common theme. AM testified that the kissing and fondling occurred in the family home, and the acts of sodomy occurred in the privacy of a bedroom or bathroom. The alleged acts with LL occurred while several children and adults were sleeping together in a living room. MR described the alleged touching as occurring in a bedroom while other children were in the house but in another room.

*Time span*: AM testified that the acts stopped about 10 years before the trial, 8 years before the acts described by LL. While this time gap is not fatal to admissibility, it lessens the probative value to show a plan or scheme. This case is different from *Munoz*, where the incidents, even though 12 years apart, both involved the same kinds of acts committed in the family home by the accused with his two daughters, and where the daughters were approximately the same age when they were victimized by their father.

■ We conclude that the acts described by AM are not sufficiently similar to the charged acts to show plan or scheme. Likewise, they do not have the high degree of similarity required to show *modus operandi*. All that the record shows is disparate sexual acts with young girls of varying ages under various circumstances.

Because we reject the Government's argument that the evidence was admissible to show *modus operandi*, we need not decide whether sustaining the military judge's ruling on the basis of *modus operandi* would violate due process, since that theory was not litigated at trial. *See United States v. Riley*, 50 MJ 410, 416 (1999).

■ Turning to the other bases for admissibility asserted by the Government and relied on by the military judge, we conclude that the evidence had some tendency to show motive and intent, but these issues were not contested. The charged acts were so overtly sexual that motive and intent were not in issue. The issue was whether the acts happened. Thus, the probative value of the

evidence was minimal on the issues of motive and intent. The military judge found that the acts showed appellant's "unnatural sexual desire for young girls." What the military judge found was propensity evidence, *i.e.*, that appellant had tendencies toward pedophilia.

■ Likewise, ability and opportunity were not in issue. There was no question that appellant had the opportunity and ability to commit the acts. He readily admitted it.

■ Lack of mistake was not in issue. Appellant did not assert mistake or accident. With respect to LL's allegation, appellant admitted that he awakened with his arm around LL, but he asserted that LL initiated the act.

■ Assuming without deciding that the minimal probative value of AM's testimony on the issue of intent is sufficient to satisfy the second prong of *Reynolds*, we hold that it fails the third prong because the prejudicial impact of AM's testimony outweighed its probative value. The offenses described by AM were far more serious than the charged offenses. AM was appellant's natural daughter. LL was appellant's niece, a much more distant relative. Appellant and MR were unrelated. LL and MR described isolated incidents. AM described an incestuous, long-term pattern of fondling, kissing, digital penetration, cunnilingus, and fellatio—virtually every sexual act except vaginal intercourse. Notwithstanding the deference we give a military judge on balancing under Mil.R.Evid. 403, we hold that the military judge clearly abused his discretion.

### Decision

The decision of the United States Army Court of Criminal Appeals is reversed with respect to the findings of guilty of the Charge and its specifications and the sentence. It is affirmed with respect to the remaining findings of guilty. The case is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals. That court may either dismiss the Charge and its specifications and reas-

sess the sentence on the basis of the remaining findings of guilty; or it may authorize a rehearing.

SULLIVAN, Judge, with whom CRAWFORD, Judge, joins (dissenting):

Appellant was charged with placing his hand inside the underwear of 8–year–old MR (the daughter of a close family friend) and touching her vagina with an intent to satisfy his lust. He was also charged with putting his hand on the thighs and breast of 13–year–old LL (his niece) and putting his finger inside her vagina with intent to satisfy his lust. Finally, he was charged with putting his tongue inside the mouth of LL with intent to satisfy his lust. Thus, the prosecution was particularly required by law[1] to prove appellant's sexual desires or passions as an essential part of this child sexual abuse case. *See United States v. Whitner,* 51 M.J. 457 (1999) (fact that element not disputed does not remove prosecution's burden of proof), citing *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Moreover, both MR and LL testified that appellant committed the charged acts. Appellant also testified but denied committing the charged offenses. He did say, however, that he was awakened one night by LL putting his arm to her chest, which he immediately stopped and told her, "This isn't right." Obviously, whether appellant committed the charged acts was the critical issue in this case. Consequently, evidence of a sexual motive on his part for such acts assumed a heightened probative value in these one-on-one credibility contests. *See generally United States v. Mann,* 26 MJ 1, 3 (CMA 1988).

The testimony of appellant's daughter, AM, that he repeatedly sexually abused her from the ages of 4 to 13 clearly demonstrated his "unusual" sexual desire for young girls such as the alleged victims in this case. *See United States v. Johnson,* 132 F.3d 1279, 1282 (9th Cir.1997). In addition, this evidence established a motive for the doing of charged sexual acts against MR

and LL as an outlet for these long-standing desires. *See Whitner, supra* at 460–61. It also indicated a method of operation entailing deliberate exploitation of his adult position of authority to accomplish his desired sexual gratification. *United States v. Meacham,* 115 F.3d 1488, 1495 (10th Cir.1997). Finally, the military judge repeatedly warned the members that they could not use the evidence to show appellant had a bad character and therefore probably committed the charged offenses. *United States v. Hadley,* 918 F.2d 848, (9th Cir.1990).

I disagree with the majority's selective discounting of the relevance of this uncharged-misconduct evidence for these Mil. R.Evid. 404(b) purposes. The majority focuses on distinctions without a difference, *i.e.,* father instead of an uncle or head of visited household, appellant's home as crime situs instead of a relative's house, and minor age differentials at various times of the misconduct. In my view, these distinctions neither singularly nor together support a determination of irrelevance. *See* Mil.R.Evid. 401 (any tendency to make existence of fact of consequence more probable or less probable).

Turning to the Mil.R.Evid. 403 question, that portion of AM's testimony concerning oral sodomy is a much closer call, but one which is properly entrusted to the trial judge. *See United States v. Johnson,* 49 MJ 467, 475 (1998) (no abuse of discretion in admitting prior sexual misconduct evidence where Mil.R.Evid. 403 question given "thoughtful consideration by the military judge"). The defense asked the military judge to excise certain testimony from AM that she and appellant engaged in consensual oral sodomy. He did not grant this request because he concluded that the probative value of this evidence was not substantially outweighed by its prejudicial impact, assuming proper limiting instructions were given.

The precise question before us is whether the military judge abused his discretion in determining that this evidence was not unfairly or "unduly" prejudicial. *See generally*

---

1. Para. 87b(1)(d), Part IV, Manual for Courts–Martial, United States (1995 ed.); Art. 134, Uniform Code of Military Justice, 10 USC § 934.

*United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). In other words, did the judge clearly err in finding no genuine and disproportionate risk that the members would be so inflamed by this evidence that they would ignore other evidence in this case and convict appellant simply on the basis of the uncharged misconduct. *See United States v. Van Metre,* 150 F.3d 339, 351 (4th Cir.1998). I would find no clear error by the trial judge in this regard and avoid the temptation to decide this issue *de novo.*

Oral sodomy between a father and daughter, consensual or not, is obviously outrageous. Yet, evidence of such conduct was not necessarily unduly inflammatory in the context of this case. The charged misconduct in part was similarly egregious, *i.e.,* digital penetration of a child visitor by an adult head of household. *Cf. United States v. Munoz,* 32 MJ 359, 365 (CMA 1991) (fondling alone charged). Moreover, other acts of sexual misconduct by appellant on AM, such as fondling and digital penetration, were similar to those charged and properly evidenced in this case. In these circumstances, the military judge could reasonably conclude that there was little chance that appellant would be convicted of sexual crimes against MR and LL, simply because appellant's daughter was *also* permitted to testify that appellant committed oral sodomy upon her. *See generally United States v. Van Metre, supra; Johnson,* 132 F.3d at 1283–84.

In conclusion, I still might vote to reverse this case on the basis of the trial judge's rulings excluding evidence that LL and her mother were sexually abused by LL's grandfather (appellant's father). *See generally United States v. Pagel,* 45 MJ 64, 70 (1996) (Sullivan, J., concurring in the result). However, the military judge allowed defense counsel to cross-examine the alleged victim concerning its proposed-transferred intent defense and he declined. Accordingly, I would vote to affirm this case.