UNITED STATES, Appellee,

v.

Marion H. TANKSLEY, Captain,
U.S. Navy, Appellant.

No. 99–0666.
Crim.App. No. 96–1402.

U.S. Court of Appeals for
the Armed Forces.

Argued May 2, 2000.

Decided Sept. 25, 2000.

Gierke, J., filed concurring opinion.

Sullivan, J., filed opinion concurring in part and in the result.

Effron, J., filed opinion concurring in part and dissenting in part.

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, J., and COX, S.J., joined. GIERKE, J., filed a concurring opinion. SULLIVAN, J., filed an opinion concurring in part and in the result. EFFRON, J., filed an opinion concurring in part and dissenting in part.

For Appellant: *Lieutenant Commander R.C. Klant,* JAGC, USN (argued).

For Appellee: *Lieutenant Janice K. O'Grady,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Commander Eugene E. Irvin,* JAGC, USN (on brief).

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, Captain Tanksley, a Navy doctor, was convicted of violating a lawful general regulation, five specifications of making false official statements, taking indecent liberties with a female under the age of 16, obstructing justice by communicating a threat, and false swearing, in violation of Articles 92, 107, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 907, and 934. The members sentenced appellant to confinement for 38 months, forfeiture of $3,500 pay per month for 30 months, and dismissal. The convening authority approved the sentence as adjudged but suspended the adjudged forfeitures for a period of 12 months, conditioned on appellant providing them by allotment to his wife. The Court of Criminal Appeals affirmed. 50 MJ 609 (1999).

On January 18, 2000, we granted review of the following issues:

I

WHETHER THE LOWER COURT ERRED IN FINDING THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUSTAIN A FINDING OF GUILTY TO INDECENT LIBERTIES.

II

WHETHER THE LOWER COURT ERRED IN FAILING TO FIND THAT APPELLANT WAS MATERIALLY PREJUDICED BY THE MEMBERS' CONSIDERATION OF EVIDENCE THAT APPELLANT HAD BEEN OFFERED AND REFUSED TO SUBMIT TO A POLYGRAPH EXAMINATION.

III

WHETHER THE LOWER COURT ERRED IN FAILING TO FIND THAT

APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHERE THE GOVERNMENT SEIZED A PRIVILEGED DOCUMENT APPELLANT WAS PREPARING FOR HIS ATTORNEY AND USED THAT DOCUMENT TO INVESTIGATE AND PREFER ADDITIONAL CHARGES AGAINST APPELLANT.

IV

WHETHER THE LOWER COURT ERRED IN FAILING TO FIND THAT THE MEMBERS WERE IMPROPERLY INSTRUCTED THAT THEY COULD CONSIDER THE TESTIMONY OF J REGARDING ALLEGED FONDLING THAT HAD OCCURRED 30 YEARS PRIOR AS EVIDENCE OF THE INTENT ELEMENT OF THE INDECENT LIBERTIES CHARGE.

Oral argument was heard in this case on May 2, 2000. Thereafter, appellant filed a motion asking us to reconsider granting review of two issues we previously declined to address. We now grant review of those issues, which are:

V

WHETHER THE LOWER COURT ERRED IN FAILING TO FIND THAT APPELLANT SUFFERED ILLEGAL PRETRIAL PUNISHMENT IN VIOLATION OF ARTICLE 13, UCMJ.

VI

WHETHER, IN DENYING APPELLANT'S WRIT OF HABEAS CORPUS, THE LOWER COURT ABUSED ITS DISCRETION BY RESOLVING NUMEROUS AND SIGNIFICANT FACTUAL MATTERS BASED ONLY UPON ITS REVIEW OF CONTRADICTORY AFFIDAVITS.

## I. BACKGROUND

In 1959, appellant married Loni Ruth Tanksley. Together they had four daughters: E (born in 1960); J (born in 1961); M (born in 1968); and H (born in 1970). Appel-

lant and Loni divorced in 1980 amid allegations of physical and mental abuse, as well as sexual abuse of his daughters. The older girls (E and J) had already fled the home before the divorce.

Appellant subsequently married Kelly, and together they had a daughter, P. In August 1993, appellant, Kelly, and P, now 6 years old, were visiting appellant's daughters, M and H, in Lake Charles, Louisiana. During the course of this visit, H observed her father in the bathroom with P for a long period of time, ostensibly taking a shower. H saw P towel drying her nude father. H discussed what she had seen with her sister M. Although appellant had never sexually abused M, M knew of the extensive sexual abuse that appellant had allegedly inflicted upon her older sisters prior to their leaving the home in 1976 and 1977.

In a subsequent conversation between M and her sister J, M told J about the visit, about their father still drinking throughout the day, and about the shower episode with P, witnessed by H. This conversation purportedly brought back vivid, emotional memories for J, who had been abused at a young age in the bathtub by appellant. J contacted authorities in Virginia, who started both criminal and social services type investigations.

On July 5, 1994, appellant was relieved of his medical duties at the Naval Air Station, Oceania, and temporarily assigned to the Naval Base in Norfolk. He was given a government office and computer. Although no one shared appellant's office, it was not exclusively his to use. On July 12, appellant was typing a document on this computer when he was called away from the office. He neither closed out the document nor turned off the computer. When he left the office, he closed but did not lock the door.

When appellant got to the conference room (the place to which he had been summoned), he was apprehended and taken to pretrial confinement. The duty officer, Lieutenant Commander O'Toole (a judge advocate officer) went to appellant's office to secure his personal belongings. When Commander

O'Toole entered the office, he noticed that the computer was on and the document in question was displayed on the screen. Seeing that the document was entitled "Regarding the Charges Now Pending Against Me," Commander O'Toole printed the document and removed the disk from the computer.

## II. SEIZURE OF THE STATEMENT

■ At trial, appellant objected to the seizure of the document, arguing that he had a reasonable expectation to privacy in his office and that the seizure of the computer disk was illegal under both the Fourth Amendment and Mil.R.Evid. 314 and 316, Manual for Courts–Martial, United States (1995 ed.). Both the military judge and the Court of Criminal Appeals concluded that the seizure of the disk was proper under Mil.R.Evid. 314(d) and 316(d)(3).

Although not raised at trial, appellant alleged before the Court of Criminal Appeals that the seizure of the disk also violated his Sixth Amendment right to counsel because the document was being prepared for his attorney and was therefore privileged. The Court of Criminal Appeals found that the document was exculpatory and was not used at trial. The lower court also rejected appellant's assertions that this document led to the preferral of any charges or the discovery of any otherwise undiscoverable evidence. 50 MJ at 621.

We agree that the document in question was entirely exculpatory. We also find no violation of appellant's constitutional right to be free from unreasonable searches and seizures, or any abridgement of his right to enjoy the assistance of counsel for his defense.

First, appellant occupied an office in which he had, at best, a reduced expectation of privacy. See Mil.R.Evid 314(d); *United States v. Muniz*, 23 MJ 201 (CMA 1987); *United States v. Weshenfelder*, 20 USCMA 416, 43 CMR 256 (1971); *see generally O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987)(holding that pub-lic employees have limited expectation of privacy in the workplace).

■ More importantly, appellant forfeited any expectation of privacy he might have enjoyed by leaving the document in plain view on a computer screen in an unsecured room. See Mil.R.Evid. 316(d). Finally, and most importantly, the exculpatory document in question was not used at trial, did not reveal any confidential information about defense strategy, and produced no information or leads that were not already known to the Government or within the grasp of government investigative agencies. *See generally Weatherford v. Bursey*, 429 U.S. 545, 554, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *United States v. Kelly*, 790 F.2d 130, 137 (D.C.Cir. 1986); *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir.1981). This is not a case where the Government has deprived appellant of his ability to communicate with his counsel and make decisions. While privileged communication with counsel may be the essence of the Sixth Amendment guarantee of effective assistance of counsel, the Supreme Court has rejected any *per se* rule that finds a Sixth Amendment violation when otherwise privileged, confidential information is overheard or read. *See Weatherford v. Bursey, supra.* We too decline appellant's invitation to establish such a rule.

## III. REFUSAL OF A POLYGRAPH EXAM

On December 21, 1993, appellant was interviewed by Special Agent Dillard of the Defense Investigative Service (DIS). This particular interview was one of many conducted by both Naval Criminal Investigative Service (NCIS) and DIS agents after abuse allegations were leveled against appellant by ex-wife Loni and daughters E and J around 1980.

Pursuant to this interview, Agent Dillard drafted a nine page handwritten statement, which appellant signed, substantially denying all allegations. Although the record is unclear regarding how the subject of taking a polygraph examination arose during the December 1993 interview,[1] on page eight of this statement (Pros. Ex. 2), appellant added:

---

1. The last line on the second page of the DIS information sheet included with Prosecution Ex-

I have refused to take a polygraph when offered one, because I am a doctor and I have dealt with patients and others in a law enforcement capacity, that have undergone polygraph examinations, the high emotions involved, and I refuse to subject myself to the test.

Prosecution Exhibit 2 was admitted without objection.

Mil.R.Evid. 707(a) states:

Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, *failure to take,* or taking of a polygraph examination, shall not be admitted into evidence.

(Emphasis added.)

Failure of the trial counsel to redact the above quoted sentence from Prosecution Exhibit 2 prior to submission to the finders of fact was error.

■ By failing to object, appellant forfeited the issue in the absence of plain error. *See Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Olano,* 507 U.S. 725, 732–34 (1993); *United States v. Powell,* 49 MJ 460, 463–65 (1998); *United States v. Kho,* 54 MJ 63, 65 (2000). Appellant has the burden of establishing that any plain error "materially prejudiced his substantial rights." *See United States v. Reist,* 50 MJ 108, 110 (1999).

Appellant's reliance on *United States v. Rodriguez,* 37 MJ 448 (CMA 1993), is misplaced. In *Rodriguez,* over defense objection, the special agent who administered Rodriguez's polygraph testified about the actual results of that examination, concluding that Rodriguez had not been truthful during his polygraph examination. This Court found error in the Government's failure to lay the necessary foundation for the polygraph's reliability before admitting the re-

sults of the examination. After engaging in a harmless error analysis (since there was a defense objection), we found that the Government had not met its burden of showing Rodriguez was not prejudiced by the error.

■ Here, because we conduct a plain error analysis, appellant has the burden of demonstrating prejudice. The document in question was one of 25 trial and 138 appellate exhibits admitted. After laying the foundation for the admission of Prosecution Exhibit 2, Special Agent Dillard explained that when appellant reviewed his statement, he (appellant) added the objectionable phrase concerning his refusal to take a polygraph. Appellant's counsel immediately objected to any testimony concerning the polygraph. The trial judge sustained the objection. Several questions later, the witness used the word "polygraph" in response to the trial counsel's question. The alert military judge immediately halted the answer. No further mention was made during the remainder of the trial of a polygraph examination. The record consists of over 1300 pages of testimony. This passing reference to a polygraph examination did not materially prejudice any substantial right of this appellant. *See United States v. Clark,* 53 MJ 280 (2000).

## IV. SUFFICIENCY OF THE EVIDENCE OF INDECENT ASSAULT

Appellant was charged with taking indecent liberties with P in November 1990 (Specification 1, Charge IV) and in August 1993 (Specification 2, Charge IV) while bathing with her.[2] The gravamen of the offense, as charged, was that by bathing nude, appellant exposed his genitals to P and vice versa.[3]

The evidence shows that appellant, wife Kelly, and daughter P visited M, appellant's daughter by his first wife, at her Louisiana

---

hibit 1 reads: "If subject refuses to provide information or denies allegations offer a polygraph." Prosecution Exhibit 1 was admitted without defense objection.

**2.** Appellant was found not guilty of Specification 1.

**3.** *See* para. 87c(2), Part IV, Manual for Courts–Martial, United States (1995 ed.) ("When a person is charged with taking indecent liberties, the liberties must be taken in the physical presence of the child, but physical contact is not required. Thus, one who with the requisite intent exposes one's private parts to a child under 16 years of age may be found guilty of this offense.").

home in 1993. On the morning of the alleged offense, H and her young son arrived at M's house about 7:40 a.m. to visit her father. M left for work at 8:00. Appellant began drinking wine early in the morning. In preparation for a lunch engagement with M, Kelly took a shower and got dressed. During this time, P was playing with H's son. Appellant then decided to take a shower and instructed P to "come get in the shower with me." P did not comply immediately. Again, appellant said: "P, come get in the shower with me now." Appellant's wife joined in his request, telling P to "go get in the shower with your father. We gotta go." P finally went to the bathroom with appellant, closed the door, and remained therein for "somewhere between 30 and 45 minutes."

When the door opened and P came out of the bathroom dressed in a towel, H observed her father from the back and saw that he was nude. After Kelly and H dried P and dressed her, P's mother instructed P to return to the bathroom to dry off her nude, adult father—an act which in and of itself could constitute indecent liberties with a child. After P finished drying off her father, her demeanor was changed. Prior to her taking a shower, P had been happy; after the shower, she became quiet and subdued for the remainder of that day. When appellant left the bathroom, he said to P: "P, who loves you more than anyone else in the world?" P responded: "Daddy does." Appellant asked her again: "Who loves you like no one else can?" P responded again: "Daddy does." The evidence shows that P did not answer these questions enthusiastically. P did not testify at trial.

J testified that she was born in 1961 and was about 3 or 4 years of age when appellant began bathing her. J was not allowed to sit in the tub during these baths. During the course of the bath, appellant would lather J, fondle her, and insert his fingers into her vagina and anus. Over the years, appellant's sexual abuse of J not only persisted but intensified as he conditioned her to accept such abuse. J testified that she feared her father and his demonstrated tendency to violence. When J was between 9 and 10 years old, appellant began raping her. This abuse continued until she ran away from home in 1978.

The Government introduced this evidence not only to prove appellant's abuse of J (and thus prove appellant's official statement denying such abuse was false), but also as evidence of appellant's intent to arouse, appeal to, or gratify his sexual desires when he took a bath with his minor daughter, P. Trial counsel's theory of the case was that appellant had used his parental status and bathing regimen to condition J at a young age to accept his sexual advances in the 1960s and 70s, and he was beginning this cycle anew with his "second family," specifically his daughter, P. *See United States v. Acton*, 38 MJ 330 (CMA 1993).

At the close of both the prosecution and defense cases, and hearing all the evidence, the military judge ruled, over defense objection, that the evidence surrounding the bathing of J was admissible under Mil.R.Evid. 404(b) to prove appellant's intent with regard to the two indecent liberties offenses with which appellant was charged.

Appellate defense counsel contends that the military judge's instruction,[4] requested

---

4. Each offense must stand on its own and you must keep the evidence of each offense separate. The burden is on the prosecution to prove each and every element of each offense beyond reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.

I just instructed you that you may not infer the accused is guilty of one offense because his guilt may have been proven on another offense, and that you must keep the evidence with respect to each offense separate. However, there has been some evidence presented with respect to the accused having bathed his daughter J when she

was a young child which may be used for another purpose. This testimony was offered to prove the falsehood of certain statements the accused made denying such bathing took place, in connection with the false official statement and false swearing charges and specifications before you. The testimony may also be considered by you for a limited purpose with respect to allegations of taking indecent liberties with P, as alleged in Specifications 1 and 2 of charge IV.

If you would find the testimony from J (now Mrs. G) on the matter of the accused's conduct in bathing her as a young child credible, meaningful, and useful to establishing whether the ac-

by the Government, was error. Counsel argued first that Mil.R.Evid. 404(b)'s application to the two incidents involving P and J "diluted the presumption of innocence" and, alternatively, if Mil.R.Evid. 404(b) does apply, the evidence of J's abuse was too remote and dissimilar. Thus, Mil.R.Evid. 403 should have precluded the use of any of J's testimony to show appellant's intent in bathing P. We disagree.

■ A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *United States v. Schlamer*, 52 MJ 80, 96 (1999); *United States v. Miller*, 46 MJ 63, 65 (1997). The judge's decision to admit evidence under Rule 403 is likewise reviewed for abuse of discretion. *See United States v. Lake*, 36 MJ 317, 322 (CMA 1993).

■ This Court has repeatedly concluded that a pattern of lustful intent, established in one set of specifications, could be used by factfinders as proof of lustful intent in a different set of specifications. *See* Mil. R.Evid. 404(b); *United States v. Cox*, 18 MJ 72, 74–75 (CMA 1984); *United States v. Sweeney*, 48 MJ 117 (1998); *United States v. Ruppel*, 49 MJ 247, 250 (1998); *United States v. Miller, supra; United States v. Bender*, 33 MJ 111, 112 (CMA 1991); *United States v. Reynolds*, 29 MJ 105, 109–110 (CMA 1989); *see also United States v. Johnson*, 49 MJ 467, 473–74 (1998); *United States v. Hebert*, 35 MJ 266, 268 (CMA 1992); *United States v. Munoz*, 32 MJ 359, 363–64 (CMA 1991).

■ Moreover, Mil.R.Evid. 404(b), like its federal rule counterpart, is one of inclusion. *See generally* 1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 2:31 at 163 (1999 rev. ed.). It does not say whether the "other crimes, wrongs, or acts" must be charged or uncharged conduct. Additionally, this evidentiary rule does not have a temporal yardstick by which a trial judge is to gauge the evidentiary value of the other crimes, wrongs, or acts. *See, e.g., United States v. Ruiz*, 178 F.3d 877, 880 (7th Cir. 1999)("In particular, if the acts are similar in nature to those of the charged crime, even a substantial gap in time may not destroy the relevance of the acts to the determination of the defendant's intent in committing the charged conduct."); *cf. United States v. Bailey*, 111 F.3d 1229, 1234 (5th Cir.), *cert. denied*, 522 U.S. 927, 118 S.Ct. 327, 139 L.Ed.2d 253 (1997)(test that is applied in determining the probative value of Fed. R.Evid. 404(b) evidence depends on the issue; the similarity of extrinsic and charged offenses must be greater when offered to prove identity than when offered to prove intent). The nub of the matter is whether the evidence is offered for a purpose other than to show an accused's predisposition to commit an offense.

> [T]he sole test under Mil.R.Evid. 404(b) is whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as

cused had the specific intent to arouse, appeal to, or gratify his lust or sexual desires when, ostensibly in the bathroom with P for the purpose of taking a bath, he allegedly exposed his genitals to her and required her to expose her genitals to him, then you may consider this testimony for the limited purpose of its tendency, if any, to prove that element of specific intent in connection with the allegations of having taken indecent liberties with P in Specifications 1 and 2 of Charge IV.

You may not consider this evidence for any other purpose in respect to the allegations affecting P and you may not conclude or infer from this evidence that the accused is a bad person or has criminal tendencies, and that therefore he committed the offenses involving indecent liberties, as alleged. You may not use this evidence

to establish an initial threshold that one or both of the indecent liberties incidents occurred. The only competent evidence that the incidents took place derives from the testimony of H. If you conclude from her testimony that either or both of the incidents did occur, then you may use the testimony of J regarding prior bathing incidents when she was a young child to determine if the accused had the required specific intent.

Further, you may not consider other evidence regarding french kissing, fondling, or attempts at vaginal, oral, or anal sex, as extracted from the testimony of J as a preteen or teenager, or from B, H, or M, as bearing on the issue of the accused's specific intent in connection with the allegations of indecent liberties with P or to establish that the alleged acts said to constitute indecent liberties with P took place at all.

charged, because he is predisposed to commit similar offenses.

*United States v. Castillo*, 29 MJ 145, 150 (CMA 1989).

The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character.

*Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

■ While this is not a pure uncharged misconduct case, since J's testimony was necessary for the Government to convict appellant of making a false official statement, like the Court of Criminal Appeals, we will apply the three-prong test for determining admissibility of Mil.R.Evid. 404(b) evidence announced in *United States v. Reynolds, supra.*

First, the evidence reasonably supports a finding by the court members that appellant sexually abused J, as she described it, and the Court of Criminal Appeals found her testimony to be "compelling in its candor, frankness, and chilling detail." 50 MJ at 619.

Second, the evidence made the existence of appellant's malevolent intent in bathing with P more probable. The age of the victims at the time the bathing began (between 4 and 6 years old) and the situs of the acts (in the bathroom behind closed doors but while other family members were in the home) are, as found by the courts below, "strikingly similar."

Citing *United States v. Morrison*, 52 MJ 117, 122 (1999), appellate defense counsel contends that our case law requires that the offenses be "almost identical" in order for one act or pattern of misconduct to be used to support proof of a different charge of misconduct. Appellant contends that any misconduct involving J could not have been used to support the intent element with regard to bathing P because the misconduct with J involved digital penetration, which over the years culminated in the rape of J, along with other violent abuse.

*United States v. Morrison* examined uncharged misconduct which the military judge had admitted to show "motive, plan or scheme, ability or opportunity, and lack of mistake." *Morrison*, 52 MJ at 122. The case at hand involves evidence of one crime used to support intent to commit a different crime. *See United States v. Van Metre*, 150 F.3d 339 (4th Cir.1998)(uncharged kidnapping and sexual assault of a different victim admitted as probative of intent to commit charged kidnapping); *United States v. Williams*, 816 F.2d 1527 (11th Cir.1987)("[E]xtrinsic evidence of similar acts will possess great probative value if the defendant's intent is in issue and if the Government lacks other strong evidence of the defendant's intent.").

"In criminal cases, intent is probably the most common purpose for admitting other-crimes evidence." 2 *Weinstein's Federal Evidence* § 404.22[1][a] at 404–70 (2d ed.2000). The fundamental issue was appellant's intent in bathing nude with his 6–year–old daughter. "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston*, 485 U.S. at 685, 108 S.Ct. 1496. The military judge's carefully tailored instructions (*supra* at 174–75 n. 4) to a senior panel of officers ensured that the evidence would not be used by the factfinders for other than the purpose for which it was admitted. *See generally United States v. Yellow*, 18 F.3d 1438, 1441 (8th Cir.1994); *Morgan v. Foretich*, 846 F.2d 941 (4th Cir. 1988).

The third prong of the *Reynolds* test asks whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Mil.R.Evid. 403. As we have said on a number of occasions, the military judge enjoys "wide discretion" when applying Mil.R.Evid. 403. *United States v. Rust*, 41 MJ 472, 478 (1995); *United States v. Manns*, 54 MJ 164, 166 (2000). Since the military judge in this case conducted and announced his Mil.R.Evid. 403 balancing test on the record, we will not only exercise "great restraint" in reviewing his decision, but will also give him maximum deference in determining whether there is a "clear abuse

of discretion." *See United States v. Manns, supra; United States v. Harris,* 46 MJ 221, 225 (1997); *Government of the Virgin Islands v. Archibald,* 987 F.2d 180, 186 (3d Cir.1993); *Miller,* 46 MJ at 65.

The evidence of appellant's misconduct with J was already before the members, as J testified regarding the false official statements charge. Additionally, the judge's clear, cogent, correct, and complete instructions to the court members regarding the use of J's testimony precluded any unfair prejudice that might arise in the application of J's testimony to the specification involving P. Having found a proper application of the law to the facts involving the indecent liberties offense, we find no error with the lower court's holding that the Government proved appellant's guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## V. PRETRIAL CONFINEMENT

 Following his conviction, appellant addressed the court members with a lengthy unsworn statement. He informed the members that:

> Since July 1994 I have been confined in solitary confinement. I have been confined in a cell 6 foot by 8 foot with bars on the door. The cell has a steel bunk, a commode, a sink, and a school desk, and that's all. It has a painted cement floor and a coat hook. I eat my meals in this cell and I spend most of my time trying to recognize the things I have done wrong, and what I have done wrong, and what positive action I can take to make me a better person in the future. I have been doing this for 237 days today.

Several minutes later, appellant again stated:

> Additionally, as I stated earlier, for the past 237 days I have been totally without freedom in a 6 by 8 cell in solitary confinement and I've been alone in that cell, and it's a cell with three solid steel walls and bars on the front and not able to see anyone unless they walk up to or walk past my cell. During this time I have been isolated from my family with visits from my daughter one time a week and visit from my wife two times a week. I have been strip-searched on every occasion I have had visitors or every occasion I left the compound for any reason I have been strip-searched. Stripped off my clothes, all my clothes, and completely searched. And usually when I am transported, I am transported in handcuffs and confined in a secure cage, then police vehicle. This has been severe punishment and it has been constant every day for 8 months.

Later, appellant continued:

> Officers of the jury, I close now by reaffirming that I am truly repentant and remorseful for my transgressions. And through the many days of my solitary confinement and the 2 weeks of this trial, I have become a different person than the Hollis Tanksley of before.... There will never be a second I draw a breath that I will not be reminded that you found me guilty in a General Court–Martial and that I served 8 months in solitary confinement. It wasn't Hanoi Hilton, but it was solitary confinement in a little cell with no one but me where I ate, and went to the bathroom, and slept in a steel cell with no vision except through the front.

Appellant received 237 days of pretrial confinement credit. *See United States v. Allen,* 17 MJ 126 (CMA 1984). He did not request that the court give any further consideration to his pretrial confinement being illegal pretrial punishment.

Article 13, UCMJ, 10 USC § 813, prohibits pretrial punishment. We need not decide whether appellant waived any right to credit by failure to raise the issue at trial. *United States v. Huffman,* 40 MJ 225 (CMA 1994); *see also United States v. Fricke,* 53 MJ 149 (2000). As we held in *United States v. Southwick,* 53 MJ 412, 416 (2000):

> [A]ppellant's trial tactics were tantamount to an affirmative waiver in this case, because they involved an election between two available alternatives. It is clear from the record that appellant made a tactical decision to take the pretrial-punishment issue to the members instead of asking the military judge for appropriate relief....

Accordingly, under the facts of this case, we hold that the military judge did not err by failing to *sua sponte* award additional confinement credit for pretrial punishment in violation of Article 13. We need not resolve the factual dispute concerning contradictory affidavits in Issue VI. Appellant's uncontradicted testimony concerning his pretrial punishment, presented for consideration by the members in arriving at an appropriate sentence, decides the matter.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

GIERKE, Judge (concurring):

Issue IV gives me pause, for many of the reasons set out by my learned colleague, Judge Effron. The analysis set forth in Judge Effron's opinion that bears on the issue of whether the second prong of *Reynolds* is met also bears on the balancing test under Mil.R.Evid. 403. The time lapse and the lack of similarity of the prior conduct addressed by Judge Effron tend to diminish the probative value of the evidence in question. On the other side of the scale, the prejudicial effect of the evidence regarding the prior acts with J was very high.

Had I been the military judge, I am not sure that I would have admitted the evidence. Nevertheless, I recognize that this is an area where a military judge has broad discretion. This case presented the military judge with a close judgment call, and appellant has not persuaded me that the military judge's ruling was a "clear abuse of discretion." *United States v. Manns*, 54 MJ 164, 166 (2000). Therefore, I concur.

SULLIVAN, Judge (concurring in part and in the result):

I join the majority on everything except the pretrial punishment issues, since I did not join the majority opinion in its "tantamount to an affirmative waiver" theory in *United States v. Southwick*, 53 MJ 412, 416 (2000). Nevertheless, I can join in the result on the pretrial punishment issues. Appellant does not allege that his purported illegal pretrial punishment was done to induce his confession as alleged in *United States v. Fricke*, 53 MJ 149 (2000). Accordingly, our decision in *Fricke* does not require similar action in appellant's case.

EFFRON, Judge (concurring in part and dissenting in part):

I agree with the principal opinion on Issue II (concerning the reference to the polygraph examination), Issue III (concerning the seizure of the document prepared by appellant), and Issues V and VI (pretrial confinement). I dissent on Issue IV (consideration of an uncharged incident occurring 30 years in the past). In light of my views on Issue IV, I also dissent on Issue I (sufficiency of the evidence as to the charge pertinent to Issue IV).

With respect to Issue IV, I would hold that J's testimony does not meet the second prong of the test for consideration of uncharged misconduct under *United States v. Reynolds*, 29 MJ 105 (CMA 1989), and was not admissible under Mil.R.Evid. 404(b) to prove the intent element of the indecent liberties charge.

The charge pertinent to Issue IV alleged that appellant took indecent liberties with a child by showering with his 6–year–old daughter, P, and "exposing his genitals to her and requiring her to expose her genitals to him" during the course of the shower. To prove the element that appellant committed this act to gratify his sexual desire, trial counsel offered evidence of events from 30 years earlier in the form of testimony by J, appellant's adult daughter from an earlier marriage. J claimed that appellant had digitally penetrated her when she was a young child while bathing her in the family bathtub. The military judge admitted this testimony under Mil.R.Evid. 404(b).

Evidence offered under Mil.R.Evid. 404(b) is considered under a three-part test. Under the second part of the test, the proffered evidence must make a fact of consequence more or less probable. *Reynolds, supra* at 109. The Government asserts that the 30–year–old events involving J demonstrated that appellant took a shower with P to gratify his sexual desires. The Government's the-

ory is that appellant had "conditioned" J for later sexual acts with the abuse during bathing and that the cycle was beginning anew with P.

To the extent that our Court has permitted "conditioning" as a basis for admission of evidence, we have viewed it as involving planned acts or behavior implemented to achieve a desired end. In the context of 404(b) evidence, we have held that uncharged acts "must be almost identical to the charged acts" to be admissible as evidence of a plan or scheme. *United States v. Morrison,* 52 MJ 117, 122 (1999); *United States v. Brannan,* 18 MJ 181, 183 (CMA 1984).

In the present case, there is a degree of similarity between the charged acts and the acts from 30 years in the past in terms of the age of the alleged victims and their relationship to appellant. There are significant differences, however, in terms of the nature of the acts and the surrounding circumstances. With respect to the 30–year–old events, J testified that appellant washed her in the bathtub and digitally penetrated her. There is nothing in the record to suggest similarity to the key aspects of the charged offense. There is no evidence that appellant was nude when he bathed J, that he bathed with her, that he exposed himself to her, or that others were aware of his actions. In contrast to the 30–year–old allegation, which involved only appellant and his daughter, the circumstances of the charged offense were not kept secret from the family. P was directed by her mother, in front of other family members in a relative's home, to take a shower with her father, to dry her father,[1] and to respond to her father when he later asked her who loved her. In further contrast to the earlier event, there was no evidence of any improper physical contact.

The Government's theory would require us to hold that when this father took a shower with his 6–year–old daughter, he did so to gratify his sexual desire because he physical-ly abused a different daughter 30 years earlier. As the majority opinion states, "a pattern of lustful intent" can be used by the factfinder to infer lustful intent for a separate charge. The key, however, is finding a pattern, which the evidence does not establish in this case. The acts upon which the Government's theory is based are not sufficiently similar to constitute a "plan" of conditioning and, therefore, are not admissible under Mil.R.Evid. 404(b).

I note that under current law—which was not in effect at the time of trial—evidence similar to J's testimony may be admitted in courts-martial under Mil.R.Evid. 414, which applies to certain sexual offenses. Such evidence, however, is not admissible under Mil. R.Evid. 404(b), which still applies to non-sexual offenses outside the scope of Mil. R.Evid. 414. It is important that we maintain the standard set forth in *Reynolds* for cases arising under Mil.R.Evid. 404(b) that involve evidence of a non-sexual nature.

The Government presented no other evidence to prove the intent element of the indecent liberties charge. As a result, appellant was prejudiced as to findings and the charge should be dismissed under Issue I.

With respect to the sentence, I note that appellant was also convicted of violating a lawful general regulation, five specifications of false official statements, and endeavoring to impede an investigation and intimidate witnesses. The maximum confinement possible for appellant for all offenses, including the indecent liberties charge, was 42 years. Without the indecent liberties charge, the maximum was 35 years. Appellant received a sentence of dismissal, confinement for 38 months, and forfeitures. It is noteworthy that J's testimony regarding abuse was admissible independently on the merits for one of the false official statements specifications, so the specter of crimes of sexual perversion was already before the members when they

---

1. The lead opinion states that P's mother instructing P to dry off her naked father was an "act which in and of itself could constitute indecent liberties with a child." 54 MJ at 174. I disagree with this proposition, for the Government must prove that appellant, the father, en-gaged in the exposure and contact with the requisite intent (to gratify his sexual desire). This formulation of the crime, and the issue of intent, is further clouded when one considers that it was the mother, and not appellant, who instructed P to dry off her father.

considered appellant's sentence on the other charges. Because the indecent liberties charge was not the only crime that involved evidence of aberrant sexual behavior in this case, added to the fact that the appellant received a relatively brief period of confinement in the context of the allowable maximum, I would conclude that the error was not prejudicial as to sentence.