# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist CHEY L. WILLIAMS**
**United States Army, Appellant**

ARMY 20180109

Headquarters, 82d Airborne Division
Christopher E. Martin, Military Judge
Colonel Travis L. Rogers, Staff Judge Advocate

For Appellant: Captain Zachary A. Gray, JA; William E. Cassara, Esquire (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Hannah E. Kaufman, JA; Captain Allison L. Rowley, JA (on brief).

10 December 2019

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

RODRIGUEZ, Judge:

On appeal, appellant asserts the military judge abused his discretion in admitting evidence of six uncharged acts pursuant to Military Rule of Evidence [Mil. R. Evid.] 404(b).[1] We find the military judge erred in admitting one of the uncharged acts, but find no prejudice, and affirm the findings and sentence.[2]

---

[1] We have given full and fair consideration to appellant's other two assigned errors and find they merit neither discussion nor relief.

[2] A panel of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual abuse of a child and two specifications of assault consummated by a battery, in violation of Articles 120b and 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920b

(continued . . .)

## BACKGROUND

Appellant's offenses were against his stepdaughter, JG, and his then-wife, HW. Appellant was convicted of two specifications of sexual abuse of JG by intentionally touching directly her genitalia, buttocks, and breasts with his hands, and by touching directly her breasts with his mouth, with an intent to gratify his sexual desire, on one or more occasions.[3] Appellant was also convicted of two specifications of assault consummated by a battery against HW by unlawfully pushing HW with his hands on one or more occasions, and by unlawfully pushing a door into HW with his hand.

### *Military Rule of Evidence 404(b) Prior to Trial*

Prior to trial, the government provided notice of its intent to offer evidence of twenty-six specific uncharged acts pursuant to Mil. R. Evid. 404(b).[4] The defense filed a motion in limine requesting the military judge preclude the government from introducing the twenty-six uncharged acts into evidence. Although the military judge stated during the motion hearing that the defense bore "the burden" on the motion in limine, he probed the trial counsel as to the government's intent and rationale in seeking the admissibility of the acts into evidence and their purported relevance to the charged offenses involving JG and HW.

The military judge issued a Mil. R. Evid. 404(b) written ruling discussing the government's "predominant theory" of the case as focused on appellant's "exercise of control over [HW], [JG], and the overall household." The military judge applied the three-prong test for the admission of evidence under Mil. R. Evid. 404(b), delineated in *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989), to each of the twenty-six uncharged acts. The military judge found that ten of the twenty-six uncharged acts were admissible as demonstrating appellant's "opportunity, plan, and

---

(. . . continued)

and 928. Appellant was sentenced to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence. This case is now before us for review pursuant to Article 66, UCMJ.

[3] JG was a child who was between the ages of twelve and fourteen when both the charged offenses and the uncharged acts took place.

[4] On that same day, the government also provided notice of its intent to introduce evidence pursuant to Mil. R. Evid. 414 involving four of the same uncharged acts it sought to admit into evidence pursuant to Mil. R. Evid. 404(b).

motive for committing" the charged offenses against JG, and "[appellant's] motive for committing" the charged offenses against HW.[5]

*Military Rule of Evidence 404(b) at Trial*

Pursuant to the military judge's ruling, the following acts regarding JG were admitted at trial: (1) appellant asked JG to give him backrubs; and (2) appellant laid down in his king-sized bed with JG, and asked JG's then-ten-year-old brother, WB, to leave the room with the door open. Specifically, JG testified about rubbing lotion on appellant's back whenever "he wanted." HW testified that she heard appellant ask JG to put lotion on his back and saw these backrub incidents "a couple times." WB testified that he would see appellant and his sister on appellant's bed when HW would leave for the grocery store. There, they would make fun of WB, tickle him, and tell him to go downstairs. When he left, WB testified that he would leave the bedroom door open and go downstairs to play video games.

In regards to HW, again pursuant to the military judge's ruling, the following acts were admitted at trial: (1) appellant limited HW's ability to leave the house; (2) he controlled the family finances; (3) he would follow HW to the closet during some arguments; and (4) he threw a phone at HW. Specifically, HW testified about her relationship with appellant after their wedding and move to Fort Bragg. She described appellant becoming "hostile" once she became pregnant with their child, and "more controlling" of her whereabouts and the family finances, demanding her to "come back" from her visits to a neighbor and giving her small amounts of cash from his bank account to purchase the household's grocery needs. HW described how sometimes, after arguing with appellant, she would go in their bedroom's closet, where he would still follow her. HW also testified about one incident when appellant threw a phone at her, hitting her foot and causing her to seek medical attention for her foot injury.

Prior to the panel's deliberations on findings, the military judge instructed the panel members that they could consider evidence that appellant asked JG "to give him backrubs, and that he lay down in his king-sized bed with [her], and asked [JG's brother, WB] to leave the room, with the door open, for its tendency, if any," to prove appellant's "plan, opportunity, and motive . . . . to be alone with [JG] and to touch her intimately, with an intent to satisfy his sexual desire, and that he therefore had this same motive and intent when he committed the charged sexual offenses." The military judge cautioned the panel to "consider this evidence only in regards to the" alleged offenses involving JG.

---

[5] Of the ten acts ruled admissible, the government presented evidence on only six of the acts. We will only discuss the six uncharged acts admitted into evidence at trial.

In regards to the offenses involving HW, the military judge instructed the panel members that they could consider evidence that appellant "limited [HW's] ability to leave the house, controlled the family finances, would follow [HW] to the closet during some arguments, and threw a phone at [HW], for its tendency, if any," to prove appellant's "motive to control and dominate [HW], including through the use of physical violence, and that he therefore had this same motive when he committed the charged assaults consummated by a battery." The military judge again cautioned the panel to "consider this evidence only in regards to the" offenses involving HW.

Further, the military judge cautioned the panel regarding the admitted uncharged acts as follows: "[y]ou may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged."

## LAW AND DISCUSSION

### A. Military Rule of Evidence 404(b)

Evidence of uncharged crimes, wrongs, or acts is not admissible to prove a person's character "in order to show that on a particular occasion the person acted in accordance with the character." Mil. R. Evid. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Mil. R. Evid. 404(b)(2). This list of potential purposes "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989). However, the evidence at issue must still "have some independent relevance under Mil. R. Evid. 401 and 402." *Reynolds*, 29 M.J. at 109 (citing *Ferguson*, 28 M.J. at 108). In order for evidence to be relevant, it must be "probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). The evidence must be relevant to "some issue in controversy" and survive Mil. R. Evid. 403's balancing test to ensure that its probative value is not substantially outweighed by the danger of unfair prejudice. *Reynolds*, 29 M.J. at 111.

A military judge's ruling under Mil. R. Evid. 404(b) and Mil. R. Evid. 403 will not be disturbed except for a "clear abuse of discretion." *United States v. Morrison*, 52 M.J. 117, 122 (C.A.A.F. 1999) (citation omitted). "[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). More specifically, "[a] military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J.

341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

*Reynolds* established a three-part test for the admissibility of Mil. R. Evid. 404(b) evidence:  (1) "Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?" (2) What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?" and (3) "Is the probative value . . . . substantially outweighed by the danger of unfair prejudice?" 29 M.J. at 109 (citations and quotation marks omitted). For the third prong of the *Reynolds* test, we also review a military judge's Mil. R. Evid. 403 ruling for a "clear abuse of discretion." *United States v. Ruppel*, 49 M.J. 247, 250 (1998) (citation omitted).[6] On appeal, a military judge's Mil. R. Evid. 403 decision should not be overturned unless such decision is "arbitrary, fanciful, clearly unreasonable or clearly erroneous." *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997) (citations omitted).

On appeal, appellant asserts the military judge inappropriately shifted the burden to the defense to exclude the uncharged acts and erred in his analysis of the *Reynolds* test.  We first address the burden applicable to Mil. R. Evid. 404(b) and then provide an in-depth discussion regarding the military judge's *Reynolds* analysis regarding the six uncharged acts admitted at trial.

### B.  Burden for Admissibility

Appellant argues, "[t]hough the government bore the burden of persuasion for introducing" this evidence, the defense "incorrectly stated that it bore the burden" in its written motion in limine and during the motion hearing.  At the motion hearing, the military judge stated, "[d]efense, you have the burden, and I'll start by asking if you have any evidence to present."  As a result, appellant argues the military judge inappropriately shifted the burden to the defense, applied the law incorrectly, and abused his discretion in admitting some of appellant's uncharged acts.[7]

---

[6] Our Superior Court has identified a non-exhaustive list of factors to consider when conducting a Mil. R. Evid. 403 balancing test: "[S]trength of proof of prior act—conviction versus gossip; probative weight of evidence; potential for less prejudicial evidence; distraction of factfinder; and time needed for proof of prior conduct[;] . . . temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties." *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000) (citations omitted).

[7] Defense usually bears the burden on its own motions in limine.  *See* Rule for Courts-Martial [R.C.M.] 905 ("Except as otherwise provided in [The Manual for Courts-Martial] the burden of persuasion on any factual issue the resolution of

(continued . . .)

Despite these written and oral statements, the military judge applied the three-prong *Reynolds* test, and the applicable government burdens therein, in analyzing whether to admit the proffered uncharged acts. The military judge stated in his ruling, "*[t]he government has made an insufficient showing*, however, as to how any of these acts are probative to a fact of consequence." (emphasis added). In further analysis, the military judge stated "*[t]he government failed to demonstrate* how this evidence is pertinent to their 'control' theory of the charged offenses of assault consummated by a battery." (emphasis added). It is clear from the military judge's ruling that he applied the correct burden, and did not inappropriately shift the burden to the defense. Having found the military judge applied the correct burden in ruling on the admissibility of Mil. R. Evid. 404(b) evidence, we discuss whether he abused his discretion in admitting the six uncharged acts.

### C. JG Backrub Incidents

Appellant alleges the "military judge erred in finding that the uncharged acts for the offenses against JG could be used as evidence of opportunity, plan, or motive and that they were not substantially outweighed by the danger of unfair prejudice." Appellant first states there was no evidence that he "engaged in the charged acts before, during, or after JG rubbed lotion on his back," so the uncharged act of JG rubbing lotion on appellant's back did not tend to prove that he had either the opportunity or the motive to commit the charged offenses. Appellant further argues the act of JG rubbing lotion on appellant's back is too dissimilar with the charged offenses to be admissible as evidence of appellant's plan under Mil. R. Evid. 404(b). *See, e.g., Morrison*, 52 M.J. at 122 (uncharged acts "must be almost identical to the charged acts" to be admissible as evidence of a plan or scheme) (citation omitted). As we explain below, we disagree.

In analyzing the admissibility of the backrub incidents under Mil. R. Evid. 404(b), the military judge found that appellant asked JG on several occasions to give him a backrub with lotion, including via telephone text messages, such as "I need my back massaged," and "If you still can't sleep my back still hurts :D." The evidence also established that appellant gave backrubs to JG as well; JG reported to investigators that "as usual [appellant] started rubbing her back and then he put his hand down there and did stuff," and that he would "usually rub her back, like he was being friendly, then he'd slide down." Further, the military judge considered HW's

---

(. . . continued)
which is necessary to decide a motion shall be on the moving party."). In this situation, however, the government, as the proponent of Mil. R. Evid. 404(b) evidence, bore the burden to show the uncharged acts were admissible. *See, e.g., United States v. Staton*, 69 M.J. 228, 234 (C.A.A.F. 2010) (To prove an uncharged act is relevant under *Reynolds*, the government must demonstrate a connection between the act and the non-propensity purpose for admission).

statement to law enforcement, in which she stated seeing appellant give JG a backrub with lotion, and that HW told appellant afterwards that this behavior was inappropriate.[8]

The military judge found it relevant that "regardless of who gave or received" backrubs, appellant "initiated these activities" and was charged with offenses in which he touched JG or caused JG to touch him. The military judge ruled that evidence concerning these backrubs was admissible under Mil. R. Evid. 404(b) for the "limited purpose of demonstrating [appellant's] plan, opportunity, and motive to engage in sexual acts" with JG in the future.

### The Reynolds Test for Backrubs

Turning to the second *Reynolds* prong (whether a fact of consequence to the charged offenses is made more or less probable by the existence of evidence of the uncharged act), it is significant to note that, at the time of the military judge's ruling, appellant stood charged with five specifications of sexually abusing JG on one or more occasions by digitally penetrating her vulva, touching her genitalia, buttocks, and breasts with his hands, touching her breasts and mouth with his mouth, and causing her to touch his genitalia with her hand. All these charged offenses involved appellant touching JG, or causing her to touch him, with an intent to gratify his sexual desire, outside the presence of others. Further, some of the evidence indicated appellant would start rubbing JG's back before moving his hand down her back to sexually abuse her.

Given this evidence, we conclude the military judge did not abuse his discretion in finding the backrub incidents were relevant to the charged offenses regardless of who received them, because they all appear to have been initiated by appellant. Moreover, the backrubs made certain "facts of consequence" to those charged offenses more probable, such as appellant's opportunity, plan, or motive to abuse JG. The evidence of record, coupled with the government's theory of the case, reasonably led the military judge to consider the backrubs as "evidence that [appellant] sought opportunity to touch [JG] intimately, which culminated in him seeking opportunity to touch her sexually."

---

[8] We find that the judge's fact-finding under the first *Reynolds* prong (whether the evidence reasonably supports a finding by the factfinder that appellant committed the uncharged acts), was supported by a preponderance of the evidence. JG's testimony concerning the backrubs, appellant's telephonic texts to JG, and HW's statement to law enforcement all reasonably support the judge's finding that appellant gave JG and received from her backrubs.

The military judge also reasoned that appellant's motive to commit "sensual touching with [JG] was the same motive that he had when he committed" the charged offenses. There was evidence indicating that appellant, on at least some occasions, would begin to rub JG's back prior to starting to abuse her. Accordingly, it was not unreasonable for the military judge to allow evidence of the backrubs because such evidence made a fact of consequence, appellant's motive, to sexually abuse JG more probable, and this motive remained present in all five of the specifications involving JG. *See United States v. Watkins*, 21 M.J. 224, 227 (C.M.A. 1986) (holding prior acts are admissible which reasonably could be viewed as "the expression and effect of the existing internal emotion" and "the same motive [is] shown to have existed in appellant at the time of the subsequently charged acts.").

In analyzing the evidence of the backrub incidents under the third *Reynolds* prong and conducting the applicable balancing test, the military judge found "the probative value of this evidence of backrubs is not substantially outweighed by the danger of unfair prejudice, confusing the members, or wasting time."[9] We agree.

As the military judge explained, only JG and her mother, HW, were "likely to testify to the backrubs, so the time involved [was] minimal." The backrub incidents were "distinct enough" from the charged offenses so as not to confuse the panel members, and the "backrubs and alleged sexual contacts involve the same person" in the same general timeframe. More importantly, the military judge gauged the probative value of the backrub incidents as high because demonstrating appellant's opportunity, plan, or motive to abuse JG related directly to the government's theory of the case. Any danger of unfair prejudice was ultimately lessened by the military judge's instruction to the panel on the use of the evidence. Thus, as to the third *Reynolds* prong, we find the military judge properly applied the Mil. R. Evid. 403 balancing test, and the probative value of the backrub incidents was not substantially outweighed by the danger of unfair prejudice.

### D. Appellant and JG in Bed

Concerning the uncharged act of appellant and JG lying in bed together, appellant claims that, "[c]ontrary to the military judge's [pretrial] finding that JG and appellant made WB close the bedroom door, WB testified [at trial] that the master bedroom door was always open when he saw appellant and JG on the bed and that he left the door open when he exited the room." Appellant argues that the "link between appellant and JG lying in bed together and the charged acts" is "tenuous."

---

[9] Pursuant to Mil. R. Evid. 403, "[t]he military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

Further, appellant reasons that if WB had testified that he was made to close the door or that the door was closed before he entered the bedroom, then "perhaps" this evidence would have been relevant to prove appellant's plan, motive, or opportunity to isolate JG. We again disagree.

In his ruling, the military judge examined the evidence then before him concerning appellant and JG lying in bed together. The government proffered a recorded interview of WB where he stated that appellant and JG "would lay down together in [appellant's] king-sized bed when [HW] left the house; that they would cross their arms and fingers, tell jokes, laugh out loud, and whisper things to each other, and would then make [WB] leave the bedroom and close the door." WB reportedly "never saw" JG and appellant "unclothed in the bed," but he stated that appellant's attention on his older sister "made him cry."[10] The military judge ruled the acts were admissible under Mil. R. Evid. 404(b) "for the limited purpose of demonstrating [appellant's] plan and opportunity to engage in sexual acts with [JG]."

*The Reynolds Test for Appellant and JG in Bed*

With the government's theory of the case in mind, the military judge applied the second *Reynolds* prong finding the acts in bed "probative of [appellant's] plan to isolate [JG], which the government could permissibly argue was the same plan that [appellant] demonstrated when he committed the charged offenses against [JG]" outside the presence of others. He furthered reasoned that the evidence demonstrated appellant's pursuit of "opportunities to be alone with [JG], and the government may permissibly argue that [appellant] likewise sought opportunities to be alone with [JG] when he committed the charged offenses." We conclude the military judge properly applied the second *Reynolds* prong to determine that the act of appellant lying in appellant's bed with JG demonstrated appellant's plan and opportunity to commit the charged offenses against JG.

Appellant argues that, while before trial the evidence before the military judge was that WB closed the bedroom door when he left appellant's bedroom, at trial WB testified that he left the door open, and that this difference is significant. It is not.

WB, who at the time of the offenses was between six and eight years of age, testified he left appellant in his bed with JG to go downstairs, where he would play video games while HW was out shopping. Under these circumstances, whether the

---

[10] The military judge properly found that sufficient evidence could reasonably support a panel's finding that WB saw appellant in his bed with JG and appellant made WB leave the bedroom and close the door.

bedroom door was left open or not was inconsequential for appellant's sordid purposes of being alone with his step-daughter in his bed. The military judge did not abuse his discretion in finding a clear and logical connection between appellant's activities in bed with JG and a fact of consequence to the charged offenses, that of appellant's opportunity. In other words, the evidence was highly probative and demonstrative of appellant's efforts to create the opportunity to engage in sexual activity with JG.

Under the third *Reynolds* prong, the military judge reasoned appellant's activities with JG in bed and the charged offenses involving JG all involved "physical touch," and all occurred when they were "isolated or alone," and "in the same general timeframe." We find the military judge properly applied the Mil. R. Evid. 403 balancing test, and the high probative value of appellant and JG in bed was not substantially outweighed by the danger of unfair prejudice.

### D. Offenses Against HW

The military judge ruled four pertinent uncharged acts concerning appellant and HW were probative of appellant's motive to commit the charged assault offenses against HW. The pertinent acts include: (1) appellant limited HW's ability to leave the house; (2) appellant controlled the family finances; (3) appellant would follow HW to the closet during some arguments; and (4) appellant threw a phone at HW. Appellant states that the military judge erred in finding these acts could be used as evidence of motive to control or dominate HW and that "they were not substantially outweighed by the danger of unfair prejudice."[11] With the exception of appellant's act of controlling the finances, we disagree.

### The Reynolds Test for Offenses against HW

Under the second *Reynolds* prong, the military judge found that "evidence in each of these noticed acts or instances is relevant to the charged offenses of assault consummated by a battery for their tendency to prove [appellant's] motive for committing these offenses."[12] As the military judge stated in his ruling:

---

[11] Under the first *Reynolds* prong, we find the uncharged acts involving HW were supported by a preponderance of the evidence.

[12] In other words, the military judge reasonably found that the fact of consequence to the charged offenses (appellant's motive to batter HW), was made more probable by permitting the government to present evidence of appellant's uncharged acts concerning his motive to control HW.

> The theory advanced by the government as to offenses against [HW], at least in part, is that the accused had an established motive to control and dominate [her] through the use of verbal and physical coercion. Specifically, that [appellant and HW] had frequent confrontations, and that when [appellant] reached his "boiling point," his outbursts would manifest themselves in physical and verbal abuse as an expression of his intent to dominate and control the situation. This same motive, to control and dominate, ultimately manifested itself in the charged assaults consummated by batteries. Instances that demonstrate [appellant's] motive, and especially those that demonstrate his direct or physical actions against [HW] after reaching his "boiling point," creates [sic] a logical connection to allow the government to argue that the same motive existed for both the uncharged acts and the charged offenses, and therefore makes these uncharged instances probative under the second prong of *Reynolds*.

Appellant argues the admitted uncharged acts are "wholly unrelated to the charged acts of assault consummated by a battery," that there was "no nexus between the uncharged acts and the charged acts" and, therefore, "there can be no motive existing in appellant at the time of the subsequent charged acts." Evidence showing appellant's control over HW, however, was extremely relevant and probative of the instances where appellant battered HW.

Appellant's defense at trial was that HW, like JG, fabricated the charged offenses. If appellant possessed a motive to dominate and control HW, and evidence concerning such motive could be shown to the panel, the government could reasonably rebut the defense theory that HW fabricated the assault incidents. Thus, evidence concerning appellant's motive to control HW could reasonably show the factfinder that when appellant lost control over HW, he would at times batter her. "Motive is the moving force that induces the criminal act and comes into play before the actus reus, that is, why the criminal did the act." *United States v. Jenkins*, 48 M.J. 594, 598 (Army Ct. Crim. App. 1998) (citation omitted); *see also United States v. Hamilton*, 2001 CCA LEXIS 451, at *25 (Army Ct. Crim. App. 2001) (mem. op.) ("[A]lthough never an element of an offense, [motive] may be relevant in a case to . . . to show criminal intent.").

Here, the acts that the military judge admitted pursuant to Mil. R. Evid. 404(b)—limiting HW's ability to leave the house, following HW to the closet during some arguments, and once throwing a phone at her—all point to appellant's exercise

of control over HW.[13]  Control over HW, and its loss, are central to explaining appellant's motive in battering HW.  We additionally note that all of the uncharged acts concerned the same person, HW, who was the victim of the charged offenses.  This motive, a fact of consequence to the charged offenses, was made more probable by the admitted uncharged acts.  *See, e.g., Jenkins*, 48 M.J. at 598 ("[I]f there is a common motive for both the uncharged misconduct and the charged offense, evidence that the accused committed the former strengthens the inference" that he committed the latter.).

Lastly, finding that the acts were "highly probative and relate directly to a theory of the case that the government is permitted to advance," the military judge ruled that the acts' probative value was not substantially outweighed by the danger of unfair prejudice, and thus the third *Reynolds* prong was satisfied.  We find the probative value of this evidence not substantially outweighed by any of the concerns outlined in Mil. R. Evid 403.

## CONCLUSION

We find the military judge did not abuse his discretion in admitting evidence under Mil. R. Evid. 404(b) for five of the six uncharged acts.  The one erroneously admitted uncharged act was harmless.  Otherwise, the evidence of record supports the findings of fact upon which the military judge predicated his ruling.  Moreover, the military judge used the correct legal principles in making his ruling (i.e., the *Reynolds* test, and the Mil. R. Evid. 403 balancing test), and his application of those principles to the facts was not an abuse of his discretion.

The findings of guilty and sentence are AFFIRMED.

---

[13] Regarding evidence that appellant controlled the family finances, we find the military judge erred in admitting this evidence.  The low probative value this evidence has on the charged offenses against HW is outweighed by the danger of unfair prejudice.  However, we find the minimal relevance of appellant controlling the finances, which warranted its exclusion, did not prejudicially impact the proceedings.  In light of the strength of the government's case, we find the military judge's ruling to admit this singular act was harmless.  *See United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (holding that when the remainder of the government's case was strong and the defense presented no evidence to contradict it, instead relying "on suggestion and insinuation," the Mil. R. Evid. 404(b) error was harmless); *see also United States v. Corbett*, 29 M.J. 253, 256 (C.M.A. 1989) (determining inadmissible Mil. R. Evid. 404(b) evidence had a minimal effect on the members considering all the other evidence presented at trial and the inadmissible evidence's tenuous relevance).

Senior Judge BURTON and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court