# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**No. ACM 21014**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jeremy M. ZIER**
Senior Master Sergeant (E-8), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 5 January 2024

————————————

*Military Judge*: Sterling C. Pendleton.

*Sentence*: Sentence adjudged on 14 August 2020 by SpCM convened at Joint Base San Antonio-Randolph, Texas. Sentence entered by military judge on 2 September 2020: reduction to E-7.

*For Appellant*: Major David L. Bosner, USAF; Robert A. Feldmeier, Esquire.

*For Appellee*: Major Alex B. Coberly, USAF; Major Jay S. Peer, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge RICHARDSON and Senior Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Senior Judge:

A special court-martial composed of officer members convicted Appellant of dereliction of duty for failing to maintain professional relationships with

subordinate Airmen, and committing abusive sexual contact by touching directly the genitalia and inner thigh of another Airman, in violation of Articles 92 and 120, UCMJ, 10 U.S.C. §§ 892, 920, *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM).*[1],[2] The sentence adjudged by officer members on 14 August 2020 and entered by the military judge on 2 September 2020 consisted of reduction to the grade of E-7. The convening authority denied Appellant's request for deferment of the reduction in grade.[3]

On 29 September 2022, Appellant, with assistance of civilian defense counsel, submitted his case to this court in an application for review pursuant to Article 69(d)(1)(B), UCMJ, 10 U.S.C. § 869(d)(1)(B). That application included an accompanying brief that identified five assignments of error, which we summarize here: whether (1) the evidence is legally insufficient to support a conviction for dereliction of duty because the Government presented no evidence as to the existence of any duty; (2) the military judge erred when he permitted the Government to prove Appellant committed the abusive sexual contact offense with inadmissible propensity evidence; (3) the Under Secretary of the Air Force and the Secretary of the Air Force engaged in apparent and actual unlawful command influence preventing Appellant from "receiv[ing] an impartial consideration of the merits of his other claims" during "appellate" review; (4) Appellant was subject to unlawful post-trial punishment in excess of the sentence; and (5) The Judge Advocate General (TJAG) improperly found Appellant's second supplemental petition[4] to be untimely, despite the fact that he filed that petition before the Rule for Courts-Martial 1201(g) review was

---

[1] Applicant was found not guilty of two specifications of abusive sexual contact under Article 120, UCMJ, 10 U.S.C. § 920, *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[2] All references to the Rules for Courts-Martial (R.C.M.) and the Military Rules of Evidence (Mil. R. Evid.) are to the 2019 *MCM*.

[3] Although not raised by Appellant, we note that the convening authority failed to include a reason for denying Appellant's deferment request. *See United States v. Sloan,* 35 M.J. 4, 7 (C.M.A. 1992) (the convening authority's decision on a deferral request "must include the reasons upon which the action is based" in order to facilitate judicial review (footnote omitted)), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018); s*ee also* Article 57(b), UCMJ, 10 U.S.C. § 857(b); R.C.M. 1103. Appellant has not claimed any prejudice from this error, and we find none.

[4] The petition at issue in this assignment of error sought relief from The Judge Advocate General (TJAG) on grounds that "the Secretary of the Air Force [wa]s engaged in apparent and actual unlawful command influence while [Appellant]'s conviction [wa]s pending Article 69, UCMJ[,] review."

mailed to him and despite the fact that the petition deals in part with allegations post-dating the original petition.

Before taking action on the application for review, on 22 December 2022 this court specified three issues for briefing by the parties.[5] The parties filed responsive briefs on 26 and 27 January 2023. On 18 April 2023, this court granted Appellant's application for review. *United States v. Zier*, No. ACM 21014, 2023 CCA LEXIS 178, at *21 (A.F. Ct. Crim. App. 18 Apr. 2023) (unpub. op.).[6] On 8 May 2023, Appellant filed a supplemental assignments of error brief, asking this court to incorporate the five assignments of error noted *supra.* The Government filed an answer to Appellant's supplemental assignments of error on 6 June 2023. On 13 June 2023, Appellant filed a reply brief.

Having granted Appellant's application for review, we find that Appellant's fifth assignment of error regarding review by TJAG is moot.[7]

---

[5] This court specified the following issues:

> I. WHETHER THE REFERENCES TO ARTICLE 65(b), UCMJ, WHERE IT APPEARS IN ARTICLE 69, UCMJ, AS AMENDED BY SECTION 5333 OF THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2017, NEGATE (A) THE AUTHORITY OF THE JUDGE ADVOCATE GENERAL TO REVIEW APPLICATIONS FOR RELIEF UNDER ARTICLE 69(c), UCMJ; OR (B) THE AUTHORITY OF THIS COURT UNDER ARTICLE 69(d), UCMJ, TO REVIEW THE ACTION OF THE JUDGE ADVOCATE GENERAL.

> II. WHETHER THE APPLICATION FOR RELIEF TO THE JUDGE ADVOCATE GENERAL WAS PROPERLY THE SUBJECT OF REVIEW BY THE JUDGE ADVOCATE GENERAL UNDER ARTICLE 69, UCMJ, AS AMENDED BY SECTION 5333 OF THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2017, OR BY ANY OTHER LAW.

> III. IF THE APPLICATION FOR GRANT OF REVIEW IS NOT PROPERLY BEFORE THIS COURT, WHAT RELIEF, IF ANY, DOES THIS COURT HAVE AUTHORITY TO ORDER?

*United States v. Zier*, No. ACM 21014, 2023 CCA LEXIS 178, at *1 n.2 (A.F. Ct. Crim. App. 18 Apr. 2023) (unpub. op.).

[6] Having granted Appellant's application for review, we find that no further discussion of the specified issues is required here.

[7] Appellant raised the same five assignments of error in his original, supplemental, and second supplemental petitions for relief to TJAG under Article 69, UCMJ, as he does to this court. Appellant raised the fifth assignment of error in an effort to persuade this court to grant his application for review under Article 69(d)(1)(B), UCMJ.

With respect to the first assignment of error we find error, set aside the findings of guilty to dereliction of duty under Article 92, UCMJ, and reassess Appellant's sentence. We affirm the remaining finding of guilty and the sentence, as reassessed.

## I. BACKGROUND

In April 2015, Appellant was a master sergeant stationed at Incirlik Air Base, Turkey. As the senior noncommissioned officer (SNCO) of a small unit on the base, Appellant oversaw his unit's operations and supervised several Airmen junior to him.

Sometime in April 2015, Appellant and some junior-ranking Airmen also stationed at Incirlik Air Base went on a multiday morale trip to Pamukkale, Turkey. The group mostly consisted of Airmen who were supervised by Appellant, including Senior Airman (SrA) ST, Airman (Amn) KM, CF,[8] and Staff Sergeant (SSgt) SO. SSgt AW, who was dating Amn KM but did not work for Appellant, also attended the trip. Appellant was the senior ranking member of the group.

On the last day of the trip, the group went sightseeing and then returned to their hotel to relax. Later that night, the group decided to spend time at the hotel's hot tub. Members of the group drank alcohol while in the hot tub. At some point, most of the Airmen present, including Appellant, decided to remove their swimsuits such that they were completely naked. Junior Airmen in Appellant's unit, including SrA ST and SSgt SO, saw Appellant fully naked. SSgt AW also recalled seeing Appellant get out of the hot tub, nude.

As the night progressed, Appellant began moving closer to CF in the hot tub. According to CF's testimony, at some point Appellant touched CF's lower thigh with his hand. CF did not think much of this touch and moved away from Appellant. Appellant then followed CF and touched her several more times, each time higher on her thigh. CF believed Appellant was trying to touch her in a sexual way. She further testified the touching stopped when SrA ST noticed what was happening and sat between Appellant and CF. When SrA ST left the hot tub to use the bathroom, Appellant inserted his hand in the leg opening of CF's swimsuit bottom and touched her vaginal area. CF did not consent to this touching. She testified that she was upset and soon thereafter left the hot tub area and went to her hotel room. After the trip, Appellant gave

---

[8] At the time of the trip, CF was also an Airman who worked for Appellant.

everyone in the office a pass day, which seemed to SrA ST "to be a form of payment because [Appellant] messed up."

## II. DISCUSSION

### A. Legal Sufficiency

Appellant contends that his conviction of dereliction of duty for failure to maintain a professional relationship with subordinate Airmen is legally insufficient. Specifically, Appellant argues that the Government failed to demonstrate the existence of a duty—an element of the offense. We agree and find Appellant's conviction for dereliction of duty not legally sufficient.

#### 1. Additional Background

During trial the Government called SrA ST as a witness. In addition to describing his personal recollections of the events in the hot tub in Turkey, he testified that Appellant's actions crossed "professional lines" and made him "uncomfortable . . . only because [it was his] boss." He also testified that he found it "abnormal" that his boss, Appellant, would be completely naked among his subordinates. Finally, SrA ST stated that the events in the hot tub changed the way he and CF interacted with Appellant in the workplace.

The Government also presented the testimony of SSgt AW, not a subordinate of Appellant. SSgt AW testified that he was "surprised" that Appellant was naked in the hot tub, and that he "tried to ignore it." He also stated that he thought about Appellant's rank and position, and explained that he "would not want to be in the position that the [A]irmen under [Appellant] were in." He stated that he thought it was "very odd" that Appellant was naked in a hot tub with subordinates, and he thought Appellant's actions were not appropriate behavior from a SNCO.

SSgt SO, a defense witness, testified that he thought Appellant's behavior was "inappropriate." He also testified he would not put himself in the situation of getting naked in the hot tub again.

#### 2. Law

In reviewing a case under Article 69(d), UCMJ, we may only take action with "respect to matters of law." Article 69(e), UCMJ, 10 U.S.C. § 869(e). Issues of legal sufficiency are reviewed de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). This court's assessment of legal "sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)).

5

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

The dereliction of duty specification (Charge I and its Specification) alleged:

> [T]hat [Appellant], . . . who knew of his duties at or near Pamukkale, Republic of Turkey, between on or about 1 April 2015 and on or about 30 April 2015, was derelict in the performance of those duties in that he willfully failed to maintain professional relationships with subordinate Airmen, as it was his duty to do, by wrongfully removing his clothing, such that he was completely nude, while he was in a hot tub with several Airmen who were junior in rank to him.

To find Appellant guilty of dereliction of duty in violation of Article 92, UCMJ, the members were required to find the following three elements beyond a reasonable doubt: (1) that Appellant had a duty to maintain professional relationships with subordinate Airmen; (2) that Appellant knew of this duty; and (3) that Appellant was willfully derelict in the performance of this duty by wrongfully removing his clothing, such that he was completely nude, while he was in a hot tub with several Airmen who were junior in rank to him. *See Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), pt. IV, ¶ 16.b.(3).

A military duty may be imposed by "treaty, statute regulation, lawful order, standard operating procedure, or custom of the service." 2012 *MCM*, pt. IV, ¶ 16.c.(3)(a); *United States v. Tanksley*, 36 M.J. 428, 430 (C.M.A. 1993) (citation

omitted), *overruled in part on other grounds by United States v. Inong*, 58 M.J. 460 (C.A.A.F. 2003). Furthermore, our superior court has stated:

> [I]f the Government wishes to prosecute . . . on the basis of a custom in the military service, testimony must be offered by a knowledgeable witness—subject to cross-examination—about that custom. To require less is to allow the factfinder to make a determination that a custom exists without any indication on the record as to what that custom is.

*United States v. Wales*, 31 M.J. 301, 309 (C.M.A. 1990).

The evidence must demonstrate the existence of a duty in order to satisfy the first element of a dereliction of duty offense. *Tanksley*, 36 M.J. at 430. Knowledge of a duty may be proved by direct or circumstantial evidence. *See* 2012 *MCM*, pt. IV, ¶ 16.c.(3)(b).

### 3. Analysis

#### a. Willful Dereliction of Duty

The Government failed to prove all three elements of willful dereliction of duty. Whether a military duty exists in the Air Force to abstain from unprofessional relationships is not the issue before us. Here, the Government simply failed to present sufficient evidence of that duty at Appellant's trial. While the record arguably contains some evidence that Appellant's behavior with subordinate Airmen was not appropriate nor professional, we are unconvinced that the record demonstrates that the Government admitted evidence of Appellant's existing duty to maintain professional relationships with subordinates and that he knew of this duty.

The Government was required to prove all three elements of the charged offense. This included a duty to "maintain professional relationships with subordinate Airmen" as explicitly alleged in the Specification of Charge I. The Government presented no direct evidence of a duty, thus we presume its case rested on the custom of the Air Force. The failure of the Government to adequately prove what the Air Force duty was—and that Appellant knew of this duty—precludes us from upholding the finding of guilty for the dereliction of duty offense as a matter of law. Simply stated, we find no evidence in the record to support the proposition that Appellant knew of and was bound by a military duty, stemming from "standard operating procedure" or "custom of the service" and subject to discipline under Article 92, UCMJ. 2012 *MCM*, pt. IV, ¶ 16.c.(3)(a).

In its brief to this court, the Government concedes that it would "have been prudent for the Government to admit evidence of the applicable version of Air Force Instruction (AFI) 36-2909, *Air Force Professional Relationships and Conduct,* as evidence of a duty." The Government also concedes that no witness "explicitly stated that Appellant had a duty to maintain professional relationships with subordinate Airmen." Nonetheless, the Government argues that it proved the existence of a duty through the testimony of several witnesses. The Government points to the testimony of SrA ST, who stated that he found it "abnormal" and "unprofessional" for his boss to be nude in a hot tub with subordinates. Additionally, the Government directs our attention to the testimony of SSgt AW who stated that it was not appropriate for Appellant, as a senior noncommissioned officer, to be naked in a hot tub with subordinate Airmen. Finally, the Government highlights the testimony of SSgt SO who opined that Appellant's conduct in removing his clothing in the hot tub was inappropriate.

We find this testimony highlighted by the Government provides some support for the third element of the offense—that Appellant was willfully derelict in the performance of his duty by wrongfully removing his clothing, such that he was completely nude, while he was in a hot tub with several Airmen who were junior in rank to him. However, we find the evidence falls short of establishing the first and second elements—that Appellant had an Air Force duty to maintain professional relationships with his subordinates, and that he knew of that duty. First, we note that no witness was specifically called for the purpose of establishing an Air Force duty by custom of the service, or with knowledge of an Air Force custom regarding professional relationships with junior, subordinate Airmen. *See Wales*, 31 M.J. at 309. Indeed, the words "custom" or "duty" were not used by any of the witnesses during trial. Although at least one witness opined Appellant acted unprofessionally, no witness provided evidence Appellant knew of his duty to maintain professional relationships. This opinion does not condone Appellant's behavior in Turkey, nor does it question whether a duty to maintain professional relationships exists. It would appear that the Government simply missed the layup by not offering sufficient evidence during Appellant's trial to establish an Air Force duty. The law does not permit a factfinder, or this court for that matter, to presume the existence of a duty in the absence of properly admitted evidence.

Therefore, after considering the evidence presented at trial in the light most favorable to the Government, we conclude no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In reaching this conclusion we find that the Government failed to establish both the existence of a duty—to maintain professional relationships with subordinate Airmen—and Appellant's knowledge of such duty. Accordingly, we find

Appellant's conviction for dereliction of duty legally insufficient and we set aside Appellant's conviction of that offense.

### b. Reassessment

Having set aside Appellant's conviction, we have considered whether we may reliably reassess Appellant's sentence in light of the factors identified in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). We conclude that we can.

First, we find that setting aside Appellant's conviction for dereliction of duty does not result in a dramatic change to the penalty landscape and Appellant's exposure. Here, the maximum term of confinement for Appellant's conviction for dereliction of duty was 6 months, as opposed to 12 months' confinement for his conviction of abusive sexual contact. Therefore, our action does not reduce the maximum imposable term of confinement. Moreover, the remaining elements of the maximum punishment are unchanged as they were also limited by the forum of the court-martial.

As to the second factor, although Appellant was sentenced by officer members, the only punishment adjudged in Appellant's case consisted of a one-stripe reduction in Appellant's grade—from E-8 to E-7. As to the third *Winckelmann* factor, we find the remaining convicted offense fairly "capture[s] the gravamen of criminal conduct included within the original offenses," namely Appellant touching CF in a sexual manner without her consent in the hot tub. *Id.* at 16. Finally, the remaining offense is a type with which the judges of this court have "experience and familiarity." *Id.* Accordingly, we are confident we can determine what sentence would have been imposed had Appellant been convicted of only the abusive sexual contact offense. *See id.* at 15 (holding a Court of Criminal Appeals may reassess a sentence if it "can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity . . . ." (omission in original) (quoting *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986))).

Based on our experience and familiarity with this type of offense, and taking all factors into consideration, we conclude that the panel of officer members would have imposed a sentence of at least reduction to the grade of E-7 for Appellant's abusive sexual contact conviction. Accordingly, we reassess the sentence to the same sentence Appellant received, which is a reduction to the grade of E-7.

## B. Propensity Evidence

Appellant claims the military judge erred when he permitted the Government to prove the abusive sexual contact offense—Specification 1 of Charge

II—with inadmissible propensity evidence. Specifically, Appellant argues the military judge erred in his application of the second and third prongs of the *Reynolds* test. *United States v. Reynolds*¸ 29 M.J. 105, 109 (C.M.A. 1989). We disagree and find no relief is warranted.

**1. Additional Background**

*a. Government's Notice*

Before trial, the Government provided written notice to Appellant of its intent to admit, in relevant part, evidence of the following under Mil. R. Evid. 404(b):

> Statements by [Appellant] to [CF] and [SM] inquiring whether or not they have had "one night stands" and asking them to walk him home while they were at the "smoke pit" at or near the Incirlik Air Base Enlisted Club between on or about May of 2014 and on or about September of 2015. [CF] and [SM] will describe [Appellant] as being highly intoxicated at the time he made these statements. These statements are being noticed pursuant to [Mil. R. Evid.] 404(b) as evidence of intent, plan, modus operandi, and absence of mistake on the part of [Appellant].

> Statements by [Appellant] to [CF] regarding her involvement in the Lesbian, Gay, Bi-Sexual, Transgender, and Questioning (LGBTQ) community, to include inquiring about specific sex acts between females, [CF's] sexual history, and statements including "a female just can't satisfy you the way a man can" and "maybe you just haven't had the right d[**]k yet" or words to that effect while they were at or near Pamukkale, Republic of Turkey between on or about 1 April 2015 and on or about 30 April 2015. [CF] will describe [Appellant] as being highly intoxicated at the time he made these statements. These statements are being noticed pursuant to [Mil. R. Evid.] 404(b) as evidence of intent, plan, modus operandi, and absence of mistake on the part of [Appellant].

*b. Motion in Limine*

The Defense filed a motion in limine requesting the military judge exclude the noticed evidence. The Government responded to the motion and requested an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to present testimony. During the Article 39(a), UCMJ, session, the Government presented the testimony of SM and CF.

SM testified that she was stationed at Incirlik Air Base from January 2014 until April 2015. SM stated that at that time she was junior in rank and worked under Appellant. SM described an incident that took place at the enlisted club in late 2014 or early 2015. That particular night, SM went to the enlisted club with CF and saw Appellant there. Appellant was visibly drunk. At some point that evening, Appellant asked SM and CF if they had ever had a one-night stand. SM recalled making eye contact with CF and being unsure how to react to Appellant's question.

During the Article 39(a), UCMJ, session, CF testified she went on the trip to Pamukkale, Turkey in 2015 described *supra*. CF stated that approximately 15–20 minutes before she went down to the hot tub, Appellant came into her hotel room and began asking CF about her bisexuality. CF said Appellant's questions were initially appropriate but became more sexual when Appellant asked CF to explain how two females have intercourse together and asked if CF chose to be with female partners because she hadn't "found the right d[**]k yet." CF testified that being asked those questions by Appellant—her superintendent—made her feel very uncomfortable.

### c. Military Judge's Ruling

The military judge issued a written ruling denying the defense motion to exclude this evidence. Applying the three-prong test in *Reynolds*, 29 M.J. at 109, the military judge concluded the evidence of the acts the Government sought to admit was admissible.

As to the first prong of the *Reynolds* test—that the evidence reasonably supports a finding by the court members that Appellant committed the prior crimes, wrongs or acts—the military judge concluded that the members could determine the uncharged acts—statements concerning "one-night stand[s]," "sexuality," and having "just not found the right d[**]k yet" occurred.

Concerning the second prong—that a fact of consequence is made more or less probable by the existence of the evidence—the military judge found the evidence of the uncharged acts was not being offered for propensity purposes, but rather to prove Appellant's intent and plan in committing the offenses alleged in the Specification of Charge I and Specification 1 of Charge II. Here, the military judge noted the acts of "directing conversations to a sexual nature in different situations indicate a deliberate state of mind consistent with the criminal intent required for" the offenses. He further explained that the acts "demonstrate[ ] the [Appellant]'s desire and intent to direct the conversation or situation to one of a sexual nature . . . to test the boundaries of CF's willingness to engage in sexual activity." The military judge then noted that some of

these acts occurred on the same night as the offenses alleged in the Specification of Charge I and Specification 1 of Charge II.

Finally, as to the third *Reynolds* prong, the military judge found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The military judge described the probative value as "significant" as to Appellant's state of mind relative to the charges. While also concluding the members would not be misled or confused by the proffered evidence, nor would they use it for an improper purpose. The military judge also noted that any evidence admitted under Mil. R. Evid. 404(b) would be accompanied by a limiting instruction, directing the members on how they could properly use the evidence.

### 2. Law

A military judge's ruling under Mil. R. Evid. 404(b) and Mil. R. Evid. 403 will not be disturbed except for a clear abuse of discretion. *United States v. Morrison*, 52 M.J. 117, 122 (C.A.A.F. 1999) (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) [ ] incorrect legal principles were used; or (3) [ ] his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008) (per curiam)). Stated another way, an abuse of discretion occurs when the military judge's decision is "outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citation omitted).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is not admissible as evidence of the person's character to show the person acted in conformity with that character on a particular occasion. Moreover, it cannot be used to show predisposition toward crime or criminal character. *United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010). However, such evidence may be admissible for another purpose, including to show, *inter alia*, motive, intent, plan, absence of mistake, or lack of accident. *Id.*; Mil. R. Evid. 404(b)(2). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989) (footnote omitted).

We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b): (1) Does the evidence reasonably support a finding by the factfinder that Appellant committed the other crime, wrong, or act? (2) Does the evidence of the other act make a fact of consequence to the instant offense more or less probable? (3) Is the probative value of the evidence of the other

act substantially outweighed by the danger of unfair prejudice under Mil. R. Evid. 403? *Reynolds*, 29 M.J. at 109 (citations omitted). "If the evidence fails to meet any one of these three standards, it is inadmissible." *Id.*

Concerning the third *Reynolds* prong, our superior court has instructed that "the military judge enjoys wide discretion when applying [the] Mil. R. Evid. 403" balancing test. *Tanksley*, 54 M.J. at 176 (internal quotation marks and citations omitted). They have also made clear that they will exercise great restraint in reviewing the decision and will give the decision maximum deference in determining whether there is a clear abuse of discretion when a military judge conducts Mil. R. Evid. 403 balancing on the record. *Id.* at 176–77.

**3. Analysis**

On appeal, Appellant contends the military judge's application of legal principles to the facts was unreasonable. Specifically, Appellant argues the military judge reached the wrong conclusion concerning the second and third prongs of the *Reynolds* test in finding the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. We find that the military judge did not abuse his discretion.

In his written ruling, the military judge applied the first *Reynolds* prong—whether the evidence reasonably supported a finding that Appellant engaged in other acts—and was satisfied the factfinder could reasonably determine Appellant was the person responsible for making sexually charged statements and directing conversations to sexually charged topics. We find the military judge's factfinding on the first *Reynolds* prong was supported by the evidence of record. Thus, we conclude that the military judge properly applied the first *Reynolds* prong.

The military judge applied the second *Reynolds* prong—whether the evidence of the other acts makes a fact of consequence to the instant offenses more or less probable—and found the uncharged acts were evidence of Appellant's intent to commit the offense of abusive sexual contact. Here, the Government was required to prove that Appellant touched the inner thigh and genitalia of CF with *an intent to gratify his sexual desire*, rather than by mere accident. The military judge properly recognized that a primary fact of consequence in this litigated case was Appellant's intent in engaging in sexual behavior, and unprofessional relationships. Evidence of Appellant's sexual interest in CF and another female subordinate made the fact that Appellant touched the inner thigh and genitalia of CF with an *intent to gratify his sexual desire* more probable. Furthermore, it is clear from the record of trial that the Defense made intent an issue during the cross-examination of Government witnesses at trial. Additionally, the military judge concluded there was a secondary non-

propensity purpose for allowing the evidence to be presented. Here, the military judge also found the sexually charged statements made by Appellant were indicative of Appellant's "plan to direct the conversation to one of a sexual nature so as to engage in an unprofessional relationship or sexual touching." The military judge found the acts made it more likely Appellant would engage in sexual activities and unprofessional relations with subordinates. Thus, we conclude that the military judge's application of the second *Reynolds* prong was not clearly unreasonable.

Applying the third *Reynolds* prong, the military judge found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Here, the military judge provided written assessments of both the probative value and the potential prejudice on each of the individual pieces of uncharged evidence the Government sought to introduce. The military judge concluded the probative value of the evidence was "significant as to [Appellant]'s state of mind as it relates to the Specification of Charge I and Specification 1 of Charge II," and that the danger of unfair prejudice was low because any evidence admitted under Mil. R. Evid. 404(b) would be accompanied by a proper limiting instruction that would further mitigate the likelihood of the evidence being used for an improper purpose—namely propensity. Exercising the restraint required of appellate courts and providing appropriate deference to the military judge's decision, we find the military judge's written analysis on the third prong of the *Reynolds* test is not outside the range of choices reasonably arising from the specific facts of this case and the law. *See Miller*, 66 M.J. at 307.

In conclusion, we find the military judge did not abuse his discretion in ruling the evidence was admissible for the limited purposes of showing Appellant's intent and plan to engage in sexual activities and unprofessional relations. His findings of fact were supported by the record and therefore were not arbitrary, fanciful, clearly unreasonable, or clearly erroneous. Appellant has not shown the military judge incorrectly applied the law nor that he abused his discretion by admitting the Mil. R. Evid. 404(b) evidence offered by the Government. *See Morrison*, 52 M.J. at 122 (citation omitted).

## C. Command Influence

Appellant contends that two public statements made by the Secretary of the Air Force (SECAF) and the Under Secretary of the Air Force (USECAF) nine months or more after the entry of judgment was signed in Appellant's case constituted both "actual" and "apparent" command influence. Specifically, Appellant contends these statements constituted "improper manipulation of the criminal justice process"—including the appellate process. Appellant asks that

we set aside his convictions. We disagree with Appellant and find no relief is warranted.

### 1. Additional Background

Appellant was sentenced on 14 August 2020 and the military judge signed the entry of judgment on 2 September 2020.

#### a. Statements by Air Force Leadership[9]

Ms. Gina Ortiz Jones served as the USECAF from 26 July 2021 to 6 March 2023. On 22 March 2021, prior to beginning her service as the USECAF, Ms. Jones posted a "tweet" on the social networking platform Twitter in which she stated, "Convicted sex offenders should not serve in our military." Within the same tweet, Ms. Jones included a link to a news article that apparently referenced an administrative discharge board's decision to retain Appellant despite his conviction of a sex crime.

The Honorable Frank Kendall III became the SECAF on 28 July 2021. Appellant alleges that on or about 6 January 2022, the SECAF directed Appellant's retirement as a technical sergeant and issued the following statement to print media:

> As a senior non-commissioned officer, [Appellant] had a special responsibility and duty to protect and look after the [A]irmen under his authority. [Appellant]'s misconduct against a fellow [A]irman violated that trust and his duty as an Air Force leader. Such conduct is unacceptable, does not meet Air Force standards and won't be tolerated.

#### b. TJAG's Review of Appellant's Case

In August 2022, TJAG reviewed the record of trial in Appellant's case pursuant to Article 69, UCMJ, including Appellant's original and supplemental petition, and determined no error prejudicial to the substantial rights of Appellant occurred at his court-martial. Appellant was notified of this decision on

---

[9] Information in this section comes from Appellant's Article 69, UCMJ, applications to TJAG and this court. On 17 November 2022, the Government moved to attach Appellant's original and supplemental applications to TJAG which this court granted on 28 November 2022. *See United States v. Jessie*, 79 M.J. 437, 441–46 (C.A.A.F. 2020). We assume, without deciding, that we may consider this information. *Cf. United States v. Behunin*, 83 M.J. 158, 161 (C.A.A.F. 2023) (assuming without deciding the Court of Criminal Appeals properly considered the entry of judgment from a separate court-martial).

11 August 2022, and at this same time, was informed he could petition this court for further review.

### 2. Law

Command influence is prohibited by Article 37, UCMJ, 10 U.S.C. § 837.[10] An appellate court "reviews allegations of unlawful command influence, including allegations of the appearance of unlawful command influence, de novo." *United States v. Proctor*, 81 M.J. 250, 255 (C.A.A.F. 2021) (citations omitted).

Under the previous version of Article 37, UCMJ, "[t]wo types of unlawful command influence c[ould] arise in the military justice system: *actual* unlawful command influence and *the appearance of* unlawful command influence." *United States v. Boyce*, 76 M.J. 242, 247 (C.A.A.F. 2017).

Actual command influence "is an improper manipulation of the criminal justice process which negatively affects the fair handling and/or disposition of a case." *Id.* (citations omitted). In order to demonstrate actual command influence, an appellant "must show: (1) facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness." *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (citation omitted). "[T]he initial burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation." *Id.* (citation omitted).

> Once an issue of unlawful command influence is raised by some evidence, the burden shifts to the [G]overnment to rebut an allegation of unlawful command influence by persuading the [c]ourt beyond a reasonable doubt that (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings or sentence.

*Id.* (citing *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)).

Unlike actual command influence, a meritorious claim of an appearance of command influence did not require prejudice to an accused; rather, the prejudice was the adverse impact to the "public's perception of the fairness of the

---

[10] References to Article 37, UCMJ, are to the version in effect with respect to allegations of command influence committed on or after 20 December 2019, following the enactment of the National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 532, 133 Stat. 1359–61 (2019), striking "Unlawfully influencing action of court" and inserting "Command influence."

military justice system as a whole." *Boyce*, 76 M.J. at 248–49 (footnote omitted). "[W]hen an appellant asserts there was an appearance of unlawful command influence," the appellant is required to initially "show 'some evidence' that unlawful command influence occurred." *Id.* at 249 (footnote and citations omitted). "'[S]ome evidence' of an appearance of unlawful command influence" exists when conduct "ha[s] the potential to appear to 'coerce or . . . influence' the outcome" of a court-martial. *United States v. Bergdahl*, 80 M.J. 230, 236 (C.A.A.F. 2020) (omission in original) (footnote omitted) (quoting *Boyce*, 76 M.J. at 249, 253).

If the Government failed to rebut an appellant's factual showing, it could still prevail against a claim of apparent command influence if it proved

> beyond a reasonable doubt that the unlawful command influence did not place "an intolerable strain" upon the public's perception of the military justice system and that "an objective, disinterested observer, fully informed of all the facts and circumstances, would [*not*] harbor a significant doubt about the fairness of the proceeding."

*Boyce*, 76 M.J. at 249 (alteration in original) (quoting *Salyer*, 72 M.J. at 423).

Effective 20 December 2019, Congress modified Article 37, UCMJ, to provide: "No finding or sentence of a court-martial may be held incorrect on the ground of a violation of this section unless the violation materially prejudices the substantial rights of the accused." 10 U.S.C. § 837(c); National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116–92, § 532, 133 Stat. 1360 (2019).

Our superior court has not yet addressed how this statutory change has altered its prior doctrine on apparent command influence. *See United States v. Horne*, 82 M.J. 283, 284 n.1 (C.A.A.F. 2022); *Proctor*, 81 M.J. at 255 n.3.

### 3. Analysis

As to the threshold question of whether the SECAF and the USECAF are capable of influencing the actions of Appellant's case under Article 37, UCMJ, we find they can. Next, as we stated in *United States v. Burnett*, we find "that under the applicable version of Article 37, UCMJ, Appellant is required to demonstrate material prejudice in order to obtain relief." 2022 CCA LEXIS 342, at *58 (A.F. Ct. Crim. App. 10 Jun. 2022) (unpub. op.), *rev. denied,* 83 M.J. 73 (C.A.A.F. 2022); *see* 10 U.S.C. § 837(c). Considering the specific facts of this case, under either the actual command influence or the apparent command influence standard, Appellant has failed to make the required initial showing of some evidence that unlawful command influence occurred.

As to the statements in question here, we note they were made well after the entry of judgment in this case was complete. Therefore, only the appellate process in Appellant's case was proceeding at the time the statements were made. We first address the statement made on the social media application Twitter by the USECAF that "[c]onvicted sex offenders should not serve in our military." We note the statement was not directed to anyone in particular. Moreover, it referenced Appellant not by name, but by including a link to a news article concerning the result of Appellant's discharge board. We find no evidence that the USECAF was attempting to influence the military justice appellate process. As to the second statement, we find this was a statement to accompany the decision the SECAF had made concerning Appellant's retirement application. Again, this statement was not directed to anyone in particular and, in context, served only to provide the rationale for the decision that the SECAF personally made on Appellant's retirement application.

Considering the totality of the circumstances, we are not persuaded that any objective, disinterested, fully informed observer would perceive the SECAF or the USECAF were attempting to improperly manipulate or influence the military justice appellate process by pressuring TJAG or this court to provide no relief to Appellant during the appellate review of his case. Finally, assuming *arguendo* Appellant made a sufficient initial showing of unlawful command influence, we conclude beyond a reasonable doubt that neither of the statements highlighted affected the findings or sentence or the appellate process nor, to the extent the apparent command influence doctrine still applies, put an intolerable strain on the public's perception of the fairness of the military justice system. Indeed, we provide Appellant relief as described in Section A, *supra.*

### D. Post-Trial Punishment

Appellant contends he was subjected to unlawful post-trial punishment by his command in several ways. First, Appellant complains he was not "permitted to perform military duties suitable for his grade and experience." Second, he states he was placed on administrative hold for a year, assigned only to telework, and was excluded from unit activities, morale events, and holiday parties. Finally, Appellant states he was not allowed to "interact with anyone outside" his unit's leadership. Appellant asks that we set aside the findings and sentence.

Jurisdiction is a question of law which this court reviews de novo. *United States v. Buford*, 77 M.J. 562, 564 (A.F. Ct. Crim. App. 2017). The burden to establish jurisdiction rests with the party invoking this court's jurisdiction. *Id.*

While we have considerable discretion in carrying out our Article 66(d), UCMJ, 10 U.S.C. § 866(d), responsibility to review the appropriateness of a sentence, that discretion is not unlimited. As we often have noted, this court is one of limited jurisdiction and we possess only that power authorized by the Constitution and statute, which does not include the power to fashion relief for issues not directly connected to an approved court-martial sentence. *Buford*, 77 M.J. at 564, 565. In *Buford*, Appellant took issue with the decisions of military officials, whether in personnel, finance, or both, that caused a continuing delay of his pay for the period of accrued leave that he elected to receive before going on unpaid excess leave. *Id*. at 563. This court denied relief, explaining that Article 66(d), UCMJ, does not grant this court unlimited power to "grant relief for an administrative matter unrelated to any legal deficiency and unconnected to the legality or appropriateness of a court-martial sentence." *Id*. at 565. Instead, our authority to grant relief must be rooted and limited to a legal deficiency that directly impacted a component of the sentence that was approved by the convening authority. *Id*. Stated another way, Appellant must demonstrate some "nexus" to the approved sentence. *Id*. at 563.

Appellant has not demonstrated that any of his complaints are more than administrative in nature, and has not presented evidence that military officials directed actions to increase the severity of his sentence and thereby impose illegal post-trial punishment. Therefore, we find that the actions complained of by Appellant are beyond this court's statutory jurisdiction to review and that Appellant is not entitled to relief.

## III. CONCLUSION

The findings of guilty as to the Specification of Charge I and Charge I are **SET ASIDE**. The Specification of Charge I and Charge I are **DISMISSED WITH PREJUDICE**. We reassess the sentence to a reduction to the grade of E-7. The remaining findings of guilty and the sentence, as reassessed, are correct in law, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a), 66(d), and 69(e), UCMJ, 10 U.S.C. §§ 859(a), 866(d), 869(e).

Accordingly, the remaining findings and the reassessed sentence are **AF-FIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court